Edward KNOWLTON, Appellant,

v.

STATE of Alaska, Appellee.

No. A–2822.

Court of Appeals of Alaska.

July 13, 1990.

Paul E. Malin, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellant.

Valerie A. VanBrocklin, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

OPINION

Before BRYNER, C.J., COATS and SINGLETON, JJ.

SINGLETON, Judge.

Edward Knowlton pled no contest and was convicted of four counts of forgery in the second degree, a class C felony, in violation of AS 11.46.505(a)(1). Knowlton entered into a stipulation with the state, approved by the trial court, permitting him to reserve for appeal the question whether the trial court erred in denying Knowlton's motion to dismiss based on Alaska Rule of Criminal Procedure 45. We therefore have jurisdiction of this appeal. *See Oveson v. Anchorage*, 574 P.2d 801, 803 n. 4 (Alaska 1978); *Cooksey v. State*, 524 P.2d 1251 (Alaska 1974). We affirm the trial court's order denying the motion to dismiss.

In order to understand Knowlton's contentions, it is necessary to briefly review his criminal record. On October 10, 1980, Knowlton pled no contest and was convicted of robbery in the first degree, a class A felony, in violation of AS 11.41.500(a)(1). He received a sentence of six years with four years suspended. He was to be on probation for four years after release from incarceration. In July 1984 while on probation, Knowlton was convicted of stealing $379.99 from his employer, Montgomery Ward. On March 8, 1985, Knowlton's probation officer filed a three-count petition to revoke probation charging, *inter alia*, the Montgomery Ward theft. Probation was revoked, and Knowlton was sentenced to the suspended four years. He was released on mandatory parole on June 12, 1987. Parole supervision was due to end on December 5, 1988.

In the fall of 1987, Knowlton went to work for "Redi–Kwik" Printing, Inc., as a bookkeeper. Robert Howard, Knowlton's

supervisor, fired Knowlton in November 1987. On November 30, 1987, Howard brought "Redi–Kwik" checks, allegedly forged and negotiated by Knowlton, to Fraud Investigator Sergeant Nichol of the Anchorage Police Department. Bruce Kelly, Knowlton's parole officer, learned of the alleged forgery and arrested Knowlton when Knowlton came in to meet with him on December 3, 1987. A hearing was held before the parole board which found insufficient evidence to establish probable cause to believe that Knowlton had violated the law. Knowlton was then released from incarceration on January 12, 1988.

The police continued investigation of Knowlton's alleged forgeries. On April 1, 1988, Knowlton was arrested for the same forgeries that had initiated his parole violation arrest. On May 4, 1988, the grand jury indicted Knowlton on four counts of forgery in the second degree. He was arraigned the next day. The parties appear to agree that the indictment charged the same conduct as the parole violations.

Knowlton filed a motion to dismiss based upon an alleged violation of Criminal Rule 45. Superior Court Judge Peter A. Michalski denied the motion. In his written order and decision, Judge Michalski concluded that:

> Given the different purposes of parole violation arrests and arrests by authorities for the purpose of prosecution this court rejects the argument that parole violation arrests, even if for precisely the same conduct for which subsequent charges are brought, trigger[ ] the time for prosecution under Criminal Rule 45. It is the arrest on the warrant in this action which starts the time under the rule for this case.

*See State v. Kelly,* 44 Ohio App.2d 40, 335 N.E.2d 729 (1974). This appeal followed.

## DISCUSSION

Criminal Rule 45 provides that a defendant charged with a felony, misdemeanor, or a violation shall be tried within 120 days from the time set forth in paragraph (c) of the rule. Paragraph (c) provides in relevant part:

**When Time Commences to Run.** The time for trial shall begin running, without demand by the defendant, as follows:

(1) From the date the defendant is arrested, initially arraigned, or from the date the charge (complaint, indictment, or information) is served upon the defendant, whichever is first. If the defendant is in custody or incarcerated on other charges at the time the alleged offense occurs, the time for trial shall begin running 10 days after the case is referred in writing by correctional officials to the prosecuting attorney, or 15 days from the time action is instituted in the correctional facility to impose administrative segregation, whichever is earlier. The arrest, arraignment, or service upon the defendant of a complaint, indictment, or information relating to subsequent charges arising out of the same conduct, or the refiling of the original charge, shall not extend the time, unless the evidence on which the new charge is based was not available to the prosecution at the time of the original commencement date of the 120 day period and a showing of due diligence in securing the defendant for the original charges is made by the prosecution....

█ Criminal Rule 45(c) must be read together with AS 12.25.160 which provides: "Arrest is the taking of a person into custody in order that the person may be held to answer for the commission of a crime." *See Lindsay v. State,* 698 P.2d 659, 662–63 (Alaska App.1985); *G.D. v. State,* 681 P.2d 366, 367 (Alaska App.1984). Thus, reading the rule and the statute together, as interpreted by this court and the Alaska Supreme Court, the time for trial begins to run from the date the defendant is arrested and held to answer for the commission of a specific crime as well as any subsequent charges arising out of the same conduct or same criminal episode. *See Westdahl v. State,* 592 P.2d 1214, 1216–17 (Alaska 1979); *Peterson v. State,* 562 P.2d 1350, 1357–59 (Alaska 1977).

The appellate courts of Alaska have had occasion to apply this rule to a number of fact situations. In *Aldridge v. State,* 602

P.2d 798 (Alaska 1979), the supreme court considered a charge of possession of heroin leveled against an inmate at the Fairbanks Correctional Center. Correctional authorities discovered the offense on June 28, 1976, and immediately placed Aldridge in punitive segregation. Aldridge was indicted on August 12, 1976, and tried on December 7, 1976, 132 days after the incident at the jail and 87 days after the return of the indictment. *Id.* at 799–800. The supreme court held that Aldridge's removal from the prison dormitory and placement in maximum security did not constitute an arrest, relying in part on federal authorities that held that punitive segregation was not a public act with public ramifications, focusing public obloquy on the defendant. *Id.* at 801.[1]

In *R.D.S.M. v. Intake Officer,* 565 P.2d 855, 857–58 (Alaska 1977), the supreme court held that Criminal Rule 45 did not apply to delinquency proceedings brought against a minor. The court did not explain why, but from the context of the opinion it appears clear that the court was reasoning that a minor charged with delinquency is not "held to answer" for the commission of a crime. We applied the supreme court's *R.D.S.M.* decision in *Brower v. State,* 683 P.2d 290, 292–93 (Alaska App.1984). In *Brower,* a minor was charged with an act of delinquency and the state petitioned to waive the minor for trial in the superior court. *See* AS 47.10.060. The superior court granted waiver and the juvenile was tried more than 120 days after his initial juvenile arrest. We held that Criminal Rule 45 did not begin to run until the waiver order was signed. *Brower,* 683 P.2d at 293. While we cited a number of cases in support of our holding, we did not spell out the reasoning. Again, it appears that until the minor was waived to the superior court, he was not "held to answer" for the commission of a crime.

There is no Alaska appellate decision specifically addressing the question whether the arrest of a parolee for a parole violation, which is an independent crime, triggers the beginning of the 120–day period for prosecution of the underlying offense.[2] While there are a number of cases

---

1. In *Aldridge,* 602 P.2d at 801, the supreme court noted that Criminal Rule 45 as then written did not focus on the special circumstance where an accused is already incarcerated on other charges at the time he commits an offense. It therefore recommended that the advisory committee on the criminal rules consider the question and a possible amendment to the rule. *Id.* at 801–02 & n. 11. Thereafter, Criminal Rule 45(c)(1) was amended to address crimes by incarcerated persons:

   If the defendant is in custody or incarcerated on other charges at the time the alleged offense occurs, the time for trial shall begin running 10 days after the case is referred in writing by correctional officials to the prosecuting attorney, or 15 days from the time action is instituted in the correctional facility to impose administrative segregation, whichever is earlier.

   It seems to us that the speedy trial rights of probationers and parolees who allegedly violate their conditions of release by committing new offenses and are arrested in conjunction with probation or parole revocation proceedings should also be given attention. In our view, protection of those rights should be addressed by a formal amendment to Criminal Rule 45 rather than a judicial modification of the rule. We therefore request that the supreme court's advisory committee on the criminal rules con-sider whether such an amendment would be appropriate and report its conclusions to the supreme court.

2. Two cases that have related issues are *Cannizzaro v. State,* 765 P.2d 110 (Alaska App.1988) and *Kizzire v. State,* 715 P.2d 272 (Alaska App. 1986), but both are distinguishable. In *Cannizzaro,* the defendant was convicted of an offense, appealed his conviction, and was released on bail pending appeal. After his conviction was affirmed, he filed a motion to modify his sentence. While that motion was pending, he remained out on bail. Cannizzaro failed to appear at the hearing on his motion, and the trial court issued a bench warrant authorizing Cannizzaro's arrest. On June 12, 1986, Cannizzaro was arrested in Washington and returned to Alaska. He was served with the bench warrant on June 27, 1986. Thereafter, on October 9, 1986, a grand jury returned an indictment charging Cannizzaro with failure to appear. On January 6, 1987, Cannizzaro moved to dismiss his indictment alleging a violation of his right to a speedy trial under Criminal Rule 45. He argued that the 120–day speedy trial period began to run when he was served with the June 5 bench warrant. *Cannizzaro,* 765 P.2d at 110. We disagreed. We held:

   In our view, however, Cannizzaro is mistaken, because the service of the bench warrant did not begin a criminal contempt prosecu-

from other jurisdictions discussing the interplay between an arrest for a parole violation and a defendant's speedy trial rights as they are affected by subsequent prosecution for the offense leading to the parole revocation, most of them turn on peculiarities of statutory and rule construction inapplicable to Alaska. *See, e.g., People v. Patheal*, 27 Ill.2d 269, 189 N.E.2d 309 (1963); *People v. Lykes*, 124 Ill.App.3d 604, 79 Ill.Dec. 945, 464 N.E.2d 849 (1984); *Lightsey v. State*, 493 So.2d 375 (Miss. 1986); *Commonwealth v. Warnes*, 344 Pa. Super. 347, 496 A.2d 830 (1985).

However, two cases are helpful. In *State v. Smith*, 699 P.2d 711 (Utah 1985), Smith was on a work release program from the Utah State Prison when he allegedly participated in a conspiracy that resulted in an attempted robbery. On October 15, 1981, the police arrested him for being in violation of his halfway house status for a number of reasons, one of which was that he was suspected of being involved in a conspiracy to commit a robbery. Smith was returned to prison. In the meantime, from October 1981 to April 1982, the police continued their investigation of the robbery. It was not until July 1982 that Smith was specifically charged with attempted robbery and burglary. Smith moved to dismiss for violation of his constitutional right to a speedy trial. The trial court ruled against Smith and he appealed. *Id.* at 712. The Supreme Court of Utah affirmed, holding that:

> [Smith] was arrested in October 1981 for violation of his work release status and conspiracy to commit robbery. His

subsequent imprisonment was not for the purpose of insuring his appearance at the trial for the robbery and attempted burglary charges. Rather, the reincarceration was for his violation of the conditions of parole. Since his imprisonment was for a parole violation, his speedy trial right did not attach at the time of his reincarceration.

*Id.* at 713.

In *State v. Johnson*, 92 Wash.2d 598, 599 P.2d 529 (1979), Johnson and his codefendant assaulted and robbed a third party on December 29, 1976. They were arrested shortly thereafter. No charges were filed and Johnson and his associate were released on January 3, 1977. However, both remained in custody as parole holds based on previous convictions. On January 21, 1977, Johnson was charged with robbery. His trial began on March 10, 1977. Applicable Washington speedy trial rules required trial within a specific time after a person is held to answer for a criminal offense. The trial court denied relief and Johnson appealed. *Id.* 599 P.2d at 530. The court of appeals held that Johnson was not "held to answer" for the charge of robbery during the period of the parole hold even though the parole hold was based upon the precise conduct for which he was subsequently charged. *Id.* at 530–31. The Supreme Court of Washington granted review and affirmed. The supreme court relied on an earlier decision in which it said:

> Parole is revoked for violation of the terms and conditions of parole and as part of the continuing consequences of

---

tion, or any other prosecution against him. Standing alone, a bench warrant for failure to appear serves a single purpose: to secure a person's presence in a proceeding that has already been initiated. Here, the June 5 warrant only ensured Cannizzaro's presence for further sentencing proceedings relating to his previous conviction for possession of cocaine.

. . . .

. . . Cannizzaro was not "held to answer" for a new charge upon his arrest on the warrant. Rather, his arrest acted only to secure his presence for sentencing proceedings he had previously missed.

*Id.* at 111–12.

In *Kizzire*, the defendant was convicted of a sexual offense in 1976. After serving a period

of imprisonment, he was released on probation in 1980. A condition of probation was that he refrain from being in the presence of children. On August 21, 1984, Kizzire was arrested for violating this condition when he was observed with children. Subsequent investigation established that he had sexually molested one or more of the children. On November 14, 1984, he was charged with those offenses. He argued that Criminal Rule 45 began to run when he was initially arrested for probation revocation. *Kizzire*, 715 P.2d at 273. We concluded that because the ultimate charges did not arise out of the same conduct, *i.e.*, sexual abuse of children, as the arrest for probation violation, *i.e.*, being in the presence of children, the arrest did not begin the 120–day period. *Id.* at 273–74 n. 2.

the crime for which parole was granted. Parole revocation is not punishment for the subsequent events which violate the parole and which may also constitute a separate crime.

*Johnson*, 599 P.2d at 532 (quoting *Standlee v. Smith*, 83 Wash.2d 405, 518 P.2d 721, 722 (1974).

We agree with the Washington and Utah Supreme Courts. We conclude that the differing purposes governing parole revocation proceedings and criminal trials warrant a conclusion that Knowlton was not "held to answer" for the commission of the crime of forgery, AS 12.25.160, by virtue of his arrest for violating the conditions of his parole even though the condition violated was that Knowlton refrain from committing further crimes. *See* AS 33.16.150(a) (a condition of mandatory parole is that a prisoner refrain from conduct punishable by imprisonment under state or federal law or municipal ordinance); AS 33.16.240 (a parolee may be arrested with or without a warrant for a violation of parole); *Kelly*, 335 N.E.2d at 731 (an arrest pursuant to Ohio's equivalent of AS 33.16.240 is not viewed as the equivalent of an arrest pursuant to Ohio's equivalent to AS 12.25.160 which would trigger commencement of Ohio's speedy trial protections).

The judgment of the superior court is AFFIRMED.