**Dwayne DEMIENTIEFF, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 1144.**

Court of Appeals of Alaska.

July 12, 1991.

Brian Easton, Asst. Public Defender, Kenai, and John B. Salemi, Public Defender, Anchorage, for appellant.

W.H. Hawley, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS, J., and ANDREWS, Superior Court Judge.*

OPINION

BRYNER, Chief Judge.

Dwayne Demientieff pled no contest to a charge of second-degree murder, reserving his right to appeal Superior Court Judge Gail Roy Fraties' denial of his motion to dismiss for violation of his right to a speedy trial under Alaska Criminal Rule 45. We affirm.

In the early morning of October 3, 1987, Holy Cross shopkeeper Roy Prestergard was shot and killed in his combination store and residence. Demientieff and a man named Bruce Gregory became suspects because they were reported to have been out drinking during the night of the murder.

Trooper Ron Belden traveled from Bethel to Holy Cross to investigate the shooting. Belden spoke with Gregory on October 4, the day after the homicide. Gregory told Belden that he and Demientieff were drinking and walking the streets of Holy Cross in the early morning of October 3 and that, about 7 a.m., they went upriver in Gregory's father's boat. According to Gregory, he and Demientieff shot black grouse for breakfast and then poled back down the river because they ran out of gas. Belden noted that Gregory's shoe impressions appeared similar to impressions found at the murder scene.

Trooper George Dahl helped Belden investigate the case. On October 5, based on information he received from Belden about Belden's conversation with Gregory, Dahl

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

told Demientieff's probation officer, Don Constantine, that Demientieff had consumed alcohol and possessed a firearm. Constantine and Dahl flew to Holy Cross that night. Dahl told Constantine that Demientieff and Gregory were suspects in the Prestergard homicide.

The next morning, Constantine spoke with Demientieff's father, who told him that Demientieff owned a .44 caliber handgun. Constantine seized the gun and arrested Demientieff for drinking and possessing a concealable firearm in violation of the conditions of his probation. Demientieff was transported to Bethel, where he was arraigned on October 6 on a petition to revoke probation. The petition alleged that he had consumed alcohol on October 2, 1987, had possessed a .44 caliber pistol on October 5, and had failed to pay restitution due on June 30, 1986.

Belden questioned Demientieff in Holy Cross shortly after his arrest, before he was taken to Bethel. Demientieff told Belden that, on the night of October 2–3, he and Gregory had walked around the village and had a couple of drinks; Demientieff claimed that they left early in the morning to go up the river. Demientieff denied having any weapon that night. When Belden asked Demientieff about Prestergard's store and residence, Demientieff asked for an attorney. Belden ceased the interrogation.

During the next several days, the troopers continued investigating the homicide scene, seizing numerous articles of evidence. Additional evidence was seized in early November, 1987. Much of the evidence was forwarded to Anchorage for laboratory examination. On October 7 or 8, 1987, a trooper interviewed Demientieff's brother, Ron, who said that Demientieff had told him that he and Gregory had

entered Prestergard's store and that Gregory had shot Prestergard. In November, 1987, the troopers learned of a witness who had seen Demientieff and Gregory on the street near the victim's store early on the morning of the murder. On November 12, 1987, the troopers were informed that the laboratory had matched footprints at the store with shoes belonging to Demientieff and Gregory.

Demientieff, still incarcerated in connection with the probation revocation proceedings, was formally charged with murder on December 23, 1987, and arraigned the following day. He later moved to dismiss the charge, arguing that the state had failed to bring him to trial within the 120–day speedy trial period provided for under Alaska Criminal Rule 45. Demientieff asserted that the 120–day speedy trial period commenced when he was arrested by Constantine on October 6, 1987, for violating the conditions of his probation. Judge Fraties found, however, that Rule 45 did not begin to run until Demientieff was arraigned on the murder charge on December 24. On this basis, the judge denied Demientieff's motion to dismiss.

Demientieff argues on appeal that, because he was "the state's main suspect beginning on October 6, 1987, when he was arrested" for violating probation, Rule 45 began to run on that date. Demientieff claims that the state had sufficient evidence to establish probable cause to arrest him for the murder when he was arrested for the probation violation. Demientieff further contends that the murder charge arose "out of the same conduct" as the drinking and possession of firearm charges and thus, the arrest on the probation violations commenced the running of time under Rule 45.[1]

---

1. Alaska Criminal Rule 45(c)(1) states:

    (c) When Time Commences to Run. The time for trial shall begin running, without demand by the defendant, as follows:

    (1) From the date the defendant is arrested, initially arraigned, or from the date the charge (complaint, indictment, or information) is served upon the defendant, whichever is first. If the defendant is in custody or incarcerated on other charges at the time the

alleged offense occurs, the time for trial shall begin running 10 days after the case is referred in writing by correctional officials to the prosecuting attorney, or 15 days from the time action is instituted in the correctional facility to impose administrative segregation, whichever is earlier. The arrest, arraignment, or service upon the defendant of a complaint, indictment, or information, relating to subsequent charges arising out of the

Demientieff's claims are without merit. Assuming that Demientieff established that the murder charge arose from the same conduct as the probation violation, he would still not be entitled to prevail. In *Knowlton v. State,* 795 P.2d 1287, 1291 (Alaska App.1990), we held that time under Criminal Rule 45 did not begin to run on a substantive offense when the defendant was arrested for violating the conditions of his parole. We reasoned that Criminal Rule 45(c) must be interpreted consistently with the statutory definition of arrest. *Id.* at 1288. Alaska Statute 12.25.160 defines arrest as "the taking of a person into custody in order that the person may be held to answer for the commission of a crime." We determined that the rule and statute, when read together, mean that the time for trial under Rule 45 "begins to run from the date the defendant is arrested and held to answer for the commission of a specific crime as well as any subsequent charges arising out of the same conduct or same criminal episode." *Knowlton,* 795 P.2d at 1288.

In *Knowlton,* we concluded that the defendant was not "held to answer" for the substantive offense merely by being arrested for violating his parole conditions. *Id.* at 1291. We distinguished between arrest for a substantive offense under AS 12.25.-160 and an arrest for a parole violation under AS 33.16.150(a). In this regard, we agreed with the Washington Supreme Court:

> Parole is revoked for violation of the terms and conditions of parole and as part of the continuing consequences of the crime for which parole was granted. Parole revocation is not punishment for the subsequent events which violate the parole and which may also constitute a separate crime.

*State v. Johnson,* 92 Wash.2d 598, 599 P.2d 529, 532 (1979) (quoted in *Knowlton,* 795 P.2d at 1290–91).

Probation revocation, like parole revocation, amounts to continuing punishment for the crime for which probation was originally imposed. Probation revocation is not punishment for later offenses that simultaneously amount to violations of the conditions of probation. Hence, "probation and parole revocation proceedings are not criminal proceedings within the meaning of our Rules of Criminal Procedure." *Paul v. State,* 560 P.2d 754, 756 (Alaska 1977) (quoting *State v. Sears,* 553 P.2d 907, 910 (Alaska 1976)).[2]

Since Demientieff, when arrested for violating the conditions of his probation, was not held to answer for the murder of Prestergard or even for criminal charges relating to his consumption of alcohol or possession of a concealable firearm, the Rule 45 speedy trial period did not begin to run on October 6, 1987. Rather, it began to run on December 24, 1987, when Demientieff was arraigned on the murder charge. For this reason, 120 days had not elapsed when Demientieff filed his motion to dismiss. Judge Fraties did not err in denying Demientieff's motion.

The judgment is AFFIRMED.

MANNHEIMER, J., not participating.

same conduct, or the refiling of the original charge, shall not extend time, unless the evidence on which the new charge is based was not available to the prosecution at the time of the original commencement date of the 120 day period and a showing of due diligence in securing the defendant for the original charges is made by the prosecution....

**2.** Other states have held that the time constraints of a speedy trial rule or state constitutional speedy trial provision are inapplicable in probation revocation proceedings. *See e.g., State v. Friedman,* 225 Mont. 373, 732 P.2d 1322, 1325 (1987); *State v. Oppelt,* 184 Mont. 48, 601 P.2d 394, 398–99 (1979); *State v. Chavez,* 102 N.M. 279, 694 P.2d 927, 930 (App.1985); *State v. Valentine,* 20 Wash.App. 511, 580 P.2d 1119, 1122 (1978).