990 P.2d 90

STATE of Hawai'i, Plaintiff–Appellee,

v.

Wayde K. WHITE, Defendant–Appellant.

No. 22121.

Supreme Court of Hawai'i.

Dec. 30, 1999.

**194**

T. Stephen Leong, on the briefs, Honolulu, for defendant-appellant.

Donn Fudo, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellee.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

Opinion of the Court by RAMIL, J.

Defendant-appellant Wayde K. White (White) appeals from his conviction, judgment, and sentence for burglary in the second degree, in violation of Hawai'i Revised Statutes (HRS) § 708–811(1)(1993).[1] White argues that the circuit court reversibly erred in: (1) denying his Hawai'i Rules of Penal Procedure (HRPP) Rule 48 (1998)[2] motion to

---

1. HRS § 708–811(1) (1993) provides in relevant part:

    **Burglary in the second degree.** (1) A person commits the offense of burglary in the second degree if the person intentionally enters or remains unlawfully in a building with intent to commit therein a crime against a person or against property rights.

2. Hawai'i Rules of Penal Procedure (HRPP) Rule 48 (1998) provides in pertinent part:

Dismissal.

. . . .

(b) *By Court.* Except in the case of traffic offenses, the court shall, on motion of the defendant, dismiss the charge, with or without prejudice in its discretion, if trial is not commenced within 6 months from:

(1) the date of arrest or of filing of the charge, whichever is sooner, on any offense based on the same conduct or arising from the

dismiss; (2) failing to dismiss the charges against him because his constitutional right to a speedy trial guaranteed by the sixth and the fourteenth amendments to the United States Constitution was violated; (3) denying his motion to compel discovery of police reports pertaining to the principal witness for the State of Hawaiʻi (the prosecution) testifying against White; (4) curtailing impermissibly his right of confrontation by limiting the scope of White's cross-examination of that witness; and (5) allowing the witness to testify pursuant to a plea agreement with the prosecution.[3] Contrary to the foregoing claims, the circuit court did not reversibly err.

## I. BACKGROUND

From the periods between November 10 through 12, 1994, November 26 through 28, 1994, and March 10 through March 14, 1995, several local businesses, including Creative Holidays, Nakamura Hotel, Shiseido of Hawaii, Cal's Fruits, and Heidi's Snack Shop, were burglarized. On March 15, 1995, a University Pet Center employee called the police to report that an intruder was attempting to break into her workplace. Upon their arrival, police officers discovered that the lock on the outside door of the building was broken and, soon thereafter, found Harry Cabrera (Cabrera) hiding underneath a truck in the near vicinity. They arrested him for burglarizing University Pet Center and took him to the police station where he was questioned by several detectives. Cabrera testified at trial that the detectives drove him around town and inquired about recent unsolved burglaries in other locations.

Pursuant to their conversation, Cabrera implicated White in the burglaries of Creative Holidays, Nakamura Hotel, Shisedo of Hawaii, Cal's Fruits, and Heidi's Snack Shop. Cabrera acknowledged that he told the detectives that he would be willing to make a deal with them so that he could go home.

On January 26, 1996, Cabrera entered a plea agreement wherein he agreed to plead guilty to five counts of burglary in the second degree[4] and testify truthfully against White. In return, the prosecution agreed to: (1) a five-year maximum term of incarceration; (2) concurrent sentencing on all matters; (3) a reduced mandatory minimum sentence; (4) credit for time served; and (5) refrain from bringing charges against Cabrera on four other burglaries.

Based on Cabrera's implication of White, the police arrested White on March 15, 1995 in connection with the burglaries at Creative Holidays, Nakamura Hotel, Shiseido of Hawaii, Cal's Fruits, and Heidi's Snack Shop. Officers released White from custody within forty-eight hours of his arrest for the burglaries. White, however, remained in custody because the investigatory arrest triggered the revocation of his parole pursuant to a prior conviction.[5]

On August 27, 1996, about seventeen months after his arrest, the Oʻahu Grand Jury indicted White on five counts of burglary in the second degree for the burglaries occurring at Creative Holidays (Count I), Nakamura Hotel (Count 2), Shiseido of Hawaii (Count III), Cal's Fruits (Count IV), and Heidi's Snack Shop (Count V).

---

same criminal episode for which the arrest or charge was made[.]

3. For the first time on appeal, White contends that the circuit court erred in allowing the principal witness for the prosecution to testify at trial pursuant to a plea bargain. Specifically, White alleges that the prosecution violated HRS § 710–1070(1) (1993) and Hawaiʻi Rules of Professional Conduct Rule 3.3(a)(1) (1998) by inducing plea-bargained testimony. In light of our analysis in section III.D, infra, we decline White's invitation to apply the plain error standard of review to this claim.

4. The January 26, 1996 plea agreement provided that, in addition to the burglary at University Pet

Shop, Cabrera plead guilty to offenses "under police report numbers 95103895 [Nakamura Hotel], 94476965 [Shiseido of Hawaii], 94499895 [Cal's Fruits], and 95108162 [Heidi's Snack Shop.]"

5. The conditions of White's parole stemming from his prior conviction are not in the record on appeal, and hence, it is unclear what parole condition or conditions were violated due to his arrest. In his opening brief, however, White states that, "[D]ue to his arrest on these burglary charges, [his] parole on other charges was revoked."

### A. *White's Motion to Compel Discovery*

On September 23, 1997, White filed a motion to compel discovery of, among other things, all police reports regarding Cabrera's past criminal activity and all reports concerning any pending investigations in which Cabrera was a suspect or witness. At the October 10, 1997 hearing on the motion, the prosecution represented that it did not possess the requested documents. Accordingly, the motions court denied White's request, reasoning that: (1) the requested material was not discoverable under HRPP Rule 16 (1997); (2) even if the prosecution possessed reports pertaining to other investigations or charges involving Cabrera subsequent to the charges brought in this case, those subsequent charges were irrelevant to this case; and (3) White failed to file subpoenas duces tecum with the appropriate state agencies.

On October 16, 1997, White filed a subpoena duces tecum directing the custodian of records at the Honolulu Police Department (HPD) to provide nine specific police reports involving Cabrera and any other documents dating back to March 1995 wherein Cabrera was a suspect or a witness. At the hearing on that subpoena, an HPD representative brought eleven police reports totaling about 400 pages and a printout of pending charges against Cabrera. When questioned by the motions court about the relevance of the material, White's counsel replied:

> [O]ther investigations or charges regarding [Cabrera] are necessary to show motive, intent, and ability—reasons why he would be cooperating with the prosecution in this case, uh, for any other future deals down the road. That's what we're looking at. . . .

The motions court denied White's request for documents, declaring, "I don't find relevance in what you have said. Neither do I find too much that you might get in through the trial judge." The motions court, however, retained the documents and invited White to file a motion for reconsideration explaining the relevance of such material with more particularity before the week of November 24, 1997, the week in which trial was scheduled to commence. White failed to do so.

### B. *White's Motion to Dismiss*

On December 19, 1997, White filed a motion to dismiss the charges against him because his right to a speedy trial under HRPP Rule 48 was allegedly violated. According to White's calculations, 676 days had elapsed beyond the six-month period set forth in HRPP Rule 48. White predicated his calculations, however, on the proposition that the HRPP Rule 48 clock began running on the date of White's arrest.

The prosecution countered that the HRPP Rule 48 period did not commence prior to White's indictment on August 27, 1996. Although White remained in custody from the time of his arrest, White was not held to answer for the burglaries for which he was indicted. The police released White forty-eight hours after police officers arrested him in connection with the burglaries. Rather, White remained in custody because the Hawai'i Paroling Authority revoked his parole from a prior conviction. According to the prosecution's calculations, 78 days still remained on the HRPP Rule 48 clock at the time of the HRPP Rule 48 hearing.

The motions court ultimately agreed with the prosecution and, therefore, denied White's motion.

### C. *White's Motion in Limine*

White filed a motion in limine, seeking permission to cross-examine Cabrera about his prior arrests and convictions for burglaries other than those in the instant case because such prior burglary arrests and convictions would rebut Cabrera's anticipated claim that he served merely as White's lookout. Furthermore, White reasoned that Cabrera's prior burglary charges were relevant to the issues of Cabrera's opportunity to commit the charged crimes, the identity of the perpetrator, and Cabrera's credibility.

The trial court rejected White's arguments, reasoning that Cabrera's prior burglary arrests and convictions were irrelevant to the instant case. Moreover, the trial court also ruled that, "Even if relevant[,] the prejudice outweighs any probative value. And the only exception is that if the witness has been convicted of a crime of dishonesty, then that

evidence may be used to impeach [Cabrera]. Burglary is not a crime of dishonesty."

White also requested the trial court to revisit the motion court's denial of his request for the subpoenaed HPD documents regarding Cabrera's criminal history. On the same day that the trial court heard arguments on his motion in limine, White filed a motion styled "EX PARTE MEMORANDUM IN SUPPORT OF RECONSIDERATION AND DEFENDANT[']S REQUEST FOR SUBPOENAED MATERIALS FROM [HPD]" (February 2, 1998 memorandum). In relevant part, the February 2, 1998 memorandum urged:

> [The prosecution] and your honor have argued that modus operandi, proof of identity[,] and credibility of [Cabrera], whom the defense reasonably believes committed the crimes for which [White] has been charged are irrelevant, and has hence[,] tentatively ruled that the reports which may show proof of identity of the perpetrator of these crimes, without so much as a preliminary review of the reports. [Sic] [White] contends that this unduly restricts his right of cross-examination and therefore[,] his right to [c]onfrontation under the Sixth Amendment[,] and would be reviewed using the harmless beyond a reasonable doubt standard. *State v. Liufa,* [sic] 1 Haw.App. 625, 630, 623 P.2d 1271 (1981). . . .

> By not permitting the review of these records, the defense is precluded from making offers of proof at trial and[,] therefore[,] presenting the defense theory that the person who committed these burglaries was Cabrera, not White, and that White's only involvement is that he discovered the items were stolen and should be returned and that he was unable to return the items prior to his arrest, because he had no vehicle and the vehicle of his girlfriend was in need of repair.

The trial court declined White's invitation to revisit the motions court's discovery ruling and concluded that the motions court's denial of White's request for documents was the law of the case.

D. *Trial Proceedings*

HPD Officer Michael Ogawa (Officer Ogawa) and Sergeant Gary Lee (Sergeant Lee) testified that they arrested White on March 15, 1997. Pursuant to a search warrant, Officer Ogawa recovered envelopes and ticket vouchers from a canvass bag located in the trunk of a car, which White was repairing at the time of his arrest. Sergeant Lee identified several tools recovered from the vehicle, including a tire iron, a flashlight, a vice grip, and an assortment of screwdrivers. Sergeant Russell Crosson compared the latent fingerprints taken from the Creative Holidays envelopes recovered from the car that White was repairing with White's fingerprints, and he "positively identified" four of the latent fingerprints as White's.

Cabrera subsequently took the witness stand and recounted how he and White broke into Shiseido of Hawaii, Nakamura Hotel, Heidi's Snack Shop, and Creative Holidays. Cabrera identified the bag found in the car that White was repairing as the same bag of airline tickets that he saw White take from Creative Holidays. Cabrera also identified the tire iron recovered from the same car as an instrument used in the Creative Holidays burglary.

White testified that his late girlfriend owned the car in which police recovered the airline tickets and various tools. On the day of his arrest, White entered the car to talk with his girlfriend. He inquired about a bag lying on the backseat. When his girlfriend did not respond, he took the bag, began searching its contents, and found airline tickets with another person's name and address. White stated, "What came through my mind that [sic] I was going to call this person and ask them if they [sic] missing [sic] some tickets." He then started the car but soon discovered that the brakes were not working. White managed to stop the car by shifting gears and proceeded to inspect the brakes. The police arrived soon thereafter and arrested White.

On February 6, 1998, the jury convicted White of Count I, but acquitted him of the

**198**

remainder of the charges.[6] On November 10, 1998, the circuit court sentenced White to an indeterminate maximum term of five years of incarceration with a mandatory minimum term of one year and eight months as a repeat offender. White timely appealed.

## II. *STANDARDS OF REVIEW*

### A. *HRPP Rule 48*

When reviewing a trial court's denial of an HRPP Rule 48 motion to dismiss, we apply both the "clearly erroneous" and "right/wrong" tests:

A trial court's findings of fact (FOFs) in deciding an HRPP Rule 48(b) motion to dismiss, are subject to the clearly erroneous standard of review.... However, whether those facts fall within HRPP Rule 48(b)'s exclusionary provisions is a question of law, the determination of which is freely reviewable pursuant to the "right/wrong" test.

*State v. Samonte,* 83 Hawai'i 507, 514, 928 P.2d 1, 8 (1996) (quoting *State v. Hutch,* 75 Haw. 307, 328–329, 861 P.2d 11, 22 (1993)).

### B. *Scope of Discovery*

We review a trial court's ruling limiting the scope of discovery under the abuse of discretion standard. *State v. Fukusaku,* 85 Hawai'i 462, 477–78, 946 P.2d 32, 47–48 (1997). A trial court's denial of a discovery request based on relevance, however, will be reviewed under the right/wrong standard. *See State v. Estrada,* 69 Haw. 204, 216–17, 738 P.2d 812, 821–22 (1987).

### C. *Scope of Cross–Examination*

Under the confrontation clauses of the Hawai'i and United States Constitutions, a defendant has the right to confront adverse witnesses, and a violation of this right is subject to the harmless beyond a reasonable doubt standard. *State v. Balisbisana,* 83 Hawai'i 109, 113–114, 924 P.2d 1215, 1219–20 (1996). Under this standard, we must "determine whether there is a reasonable possi-

bility that the error complained of might have contributed to the conviction." *Id.* at 114, 924 P.2d at 1220.

### D. *Plain Error*

"We may recognize plain error when the error committed affects substantial rights of the defendant." *State v. Cullen,* 86 Hawai'i 1, 8, 946 P.2d 955, 962 (1997) (citations and internal quotation signals omitted). *See also* HRPP Rule 52(b) (1993) ("Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").

*State v. Davia,* 87 Hawai'i 249, 253, 953 P.2d 1347, 1351 (1998). "[T]his [c]ourt will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights." *State v. Sawyer* 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998)(citing *State v. Fox,* 70 Haw. 46, 56, 760 P.2d 670, 676 (1988)).

## III. *DISCUSSION*

### A. *The Motions Court Properly Ruled That the HRPP Rule 48 Clock Began Running at the Time of White's Indictment, Not at the Time of His Arrest.*

White contends the six-month period provided in HRPP Rule 48 had elapsed prior to his indictment. White reasons that he was "continuously held (from March 15, 1995 through August 27, 1996) to answer for a crime (revocation of his parole) arising from the same criminal episode (the burglaries charged in this case)." Hence, White argues that under the express language of HRPP Rule 48, "as well as the ABA Standards Relating to Speedy Trial and its relevant [c]ommentary," the motions court erred in denying White's HRPP Rule 48 motion.[7] As support, White cites to the commentary on the *Standards Relating to Speedy Trial,* § 2.2, authored by the American Bar Association Project on Minimum Standards for

---

6. On February 2, 1998, the prosecution moved to nolle prosequi Count IV (burglary at Cal's Fruits) due to a defect in the indictment.

7. White does not contest the number of days excluded from the calculation of the six-month period under HRPP Rule 48(c) and (d).

Criminal Justice, which provides that "the offense charged may differ from the offense for which the defendant was held to answer." American Bar Association Project on Minimum Standards for Criminal Justice, *Standards Relating to Speedy Trial*, § 2.2(a), at 20 (1968) [hereafter *Standards Relating to Speedy Trial*]. We disagree. We hold that the motions court properly ruled that the HRPP Rule 48 clock started running at the time of White's indictment.

Because HRPP Rule 48(b)(1), *see supra* note 2, fails to define "episode," we look to the ABA standards from which HRPP Rule 48 was patterned for guidance. *State v. Ferraro*, 8 Haw.App. 284, 291, 800 P.2d 623, 628 (1990). In *State v. Jackson*, 81 Hawai'i 39, 912 P.2d 71 (1996), this court acknowledged that HRPP Rule 48 "is derived from the ABA Standards of Criminal Justice, in particular, Part II of the chapter setting forth standards relating to speedy trial." *Id.* at 53, 912 P.2d at 85 (internal quotation marks and citation omitted). ABA Standard of Criminal Justice § 12–2.2(a), adopted verbatim from *Standards Relating to Speedy Trial*, § 2.2(a), provides:

The time for trial should commence running, without demand by the defendant, as follows:

(a) from the date the charge is filed, *except that if the defendant has been continuously held in custody or on bail or recognizance until that date to answer for the crime* or a crime based on the same conduct or *arising from the same criminal episode, then the time for trial should commence running from the date the defendant was held to answer* [.[8]]

II American Bar Association, *Standards for Criminal Justice*, § 12–2.2, at 12–17 (2d ed. Supp.1986) (emphases and footnote added) [hereafter *ABA Standards for Criminal Justice*]. The commentary on the aforemen-

tioned standard elaborates on the meaning of the phrase "arising from the same criminal episode" by defining "episode" as "an occurrence or connected series of occurrences and developments which may be viewed as distinctive and apart although part of a larger and more comprehensive series." *ABA Standards for Criminal Justice*, § 12–2.2, at 12–21. The commentary points to "the simultaneous robbery of seven individuals, the killing of several people with successive shots from a gun, the successive burning of three pieces of property, or such contemporaneous and related crimes as burglary and larceny, or kidnaping and robbery" as examples of crimes arising from the same criminal episode. *Id.* (footnotes omitted). Furthermore, the commentary also provides six scenarios to illustrate the "operative effect" of the standard. *ABA Standards for Criminal Justice*, § 12–2.2, at 12–22 to –23. None of those illustrations, however, encompasses White's claim that revocation of a defendant's parole on a previous conviction "arises from the same criminal episode" as the commission of the underlying offense for which defendant was arrested. Rather, the commentary on ABA Standard of Criminal Justice § 12–2.2 provides that one of the objectives of the "arising from the same criminal episode" qualification is that "the prosecutor should not be responsible for the time that elapses before a charge is filed simply because the defendant is being held to answer on an unrelated offense." *Id.* at 12–21.

In addition to consulting the ABA Standards and its commentary, the Intermediate Court of Appeals in *Ferraro, supra*, turned to the following test to construe the term "arising from the same criminal episode" in the HRPP Rule 48 context:

the singleness of a criminal episode should be based on whether the alleged conduct was so closely related in time, place[,] and circumstances that a complete account of

---

8. The ABA Standards differ from HRPP Rule 48 in one respect. Under the ABA Standards, the time period runs from the date the defendant was "held to answer," rather than the date of "arrest" as set forth in HRPP Rule 48. The commentary on the ABA Standards defines the date the defendant was "held to answer" as "the date on which the defendant was brought before a judicial officer on some allegation of a crime or

series of crimes ... upon which that judicial officer ordered the defendant thereafter held in custody or released on bail or recognizance." II American Bar Association, *Standards for Criminal Justice*, § 12–2.2, at 12–20 (2d ed. Supp. 1986). HRPP Rule 48, however, refers to the date of arrest as the starting point for the HRPP Rule 48 clock. *See supra* note 2.

one charge cannot be related without referring to details of the other charge.

8 Haw.App. at 292, 800 P.2d at 628–29 (quoting *State v. Carroll*, 63 Haw. 345, 351, 627 P.2d 776, 780 (1981)).

Accordingly, because a prior conviction is a necessary predicate to a parole violation, White's prior conviction was *unrelated* in time, place, or circumstance to the burglaries charged against White in this case. We hold, therefore, that White's parole violation and the burglaries for which he was arrested do not "arise from the same criminal episode."

Our holding today also finds support from other jurisdictions. For example, in *State v. Johnson*, 92 Wash.2d 598, 599 P.2d 529 (1979) (en banc), the defendant was arrested for robbery and assault, subsequently released with respect to those offenses, but remained in custody on a parole violation triggered by that arrest. *Id.* at 531. The defendant asserted that he was "held to answer" for the robbery charge during the period within which he remained in custody for violating parole because the parole violation "was based upon the precise conduct for which [he] was subsequently charged." *Id.* Thus, according to the defendant, his right to a speedy trial had been violated because his trial on the robbery charge took place more than 60 days after his preliminary appearance before a judge, in contravention to Washington Superior Court Rule 3.3 (1977). *Id.* at 530. Rejecting the defendant's claim, the Washington Supreme Court observed:

> Although the parole hold was triggered by the conduct for which [the defendant] was subsequently charged, the incarceration during the period of the parole hold was in fact based upon a prior valid conviction which was totally unrelated to the pending charges. As we noted in *Standlee v. Smith*, 83 Wash.2d 405, 407, 518 P.2d 721, 722 (1974):
>
> > Parole is revoked for violation of the terms and conditions of parole and as a part of the continuing consequences of the crime for which parole was granted. Parole revocation is not punishment for the subsequent events which violate the

parole and which may constitute a separate crime.

*Id.* at 532.

Also, in *State v. Smith*, 699 P.2d 711 (Utah 1985), the Utah Supreme Court held that a defendant's right to a speedy trial under the sixth amendment to the United States Constitution did not attach during a defendant's incarceration for violating parole. *Id.* at 713. The defendant was arrested for a parole violation because, among other things, he was suspected of being involved in a conspiracy to commit robbery. *Id.* at 712. About eleven months after his arrest, the prosecution filed an information charging the defendant with attempted robbery and burglary. *Id.* Unpersuaded that such a delay violated the defendant's sixth amendment right to a speedy trial, the *Smith* court held that

> [the defendant's] subsequent imprisonment was not for the purpose of insuring his appearance at the trial for the robbery and attempted burglary charges. Rather, the reincarceration was for his violation of the conditions of parole. Since his imprisonment was for a parole violation, his speedy trial right did not attach at the time of his reincarceration.

*Id.* at 713.

Similarly, in *Knowlton v. State*, 795 P.2d 1287 (Alaska Ct.App.1990), the Alaska Court of Appeals addressed the issue of "whether the arrest of a parolee for a parole violation, which is an independent crime, triggers the beginning of the ... period for prosecution of the underlying offense." *Id.* at 1289 (footnote omitted). In *Knowlton*, the defendant's parole officer arrested the defendant for alleged forgeries committed while he was on parole. Such forgeries would have violated the parole condition that the defendant refrain from committing other crimes. After a hearing, however, the parole board released the defendant for lack of sufficient evidence to establish probable cause. The police continued to investigate the defendant for the alleged forgeries and, almost four months after his arrest by his parole officer, the police arrested the defendant for the same forgeries that triggered his parole revocation proceedings. One month after he was arrested by police, a grand jury indicted the

defendant on four counts of forgery, and a jury found him guilty as charged. On appeal, the defendant argued that the trial court had erred in denying his motion to dismiss based on Alaska Rule of Criminal Procedure 45, which generally provides that a criminal defendant shall be tried within 120 days of the date of arrest, arraignment, or indictment, whichever comes first. *Id.* at 1287–88. The *Knowlton* court concluded that

> the differing purposes governing parole revocation proceedings and criminal trials warrant a conclusion that [the defendant] was not "held to answer" for the crime of forgery ... by virtue of his arrest for violating the conditions of his parole even though the condition violated was that [the defendant] refrain from committing further crimes.

*Id.* at 1291. In arriving at this conclusion, the *Knowlton* court expressly adopted the reasoning set forth in *Johnson,* and *Smith, supra. Id.* at 1290–91.

In this case, White, like the defendants in *Johnson, Smith,* and *Knowlton,* was incarcerated for violating the conditions of parole imposed upon him pursuant to a prior conviction. White's parole restrictions were attendant to a prior conviction that was *unrelated* to the burglaries in this case. Although White's investigatory arrest triggered his parole revocation, the terms of his parole were set pursuant to an *unrelated* criminal episode. *See Johnson,* 599 P.2d at 532; *Smith,* 699 P.2d at 713; *cf. Demientieff v. State,* 814 P.2d 745, 747 (Alaska Ct.App.1991) (holding that "[p]robation, like parole, amounts to continuing punishment for the crime for which probation was originally imposed. Probation revocation is not punishment for later offenses that simultaneously amount to violations of the condi-

tion of probation"). In other words, by violating the conditions of his parole, White was "held to answer" for the remainder of the penalty imposed for a previous conviction. White was not "held to answer" for the burglaries until he was indicted. The investigatory arrest triggered White's parole revocation, and if White had been indicted immediately following the arrest, the Rule 48 clock would have begun to tick at *that* time. *See supra* note 2.

Accordingly, the motions court did not err in denying White's HRPP Rule 48 motion to dismiss.

**B.** *White's Constitutional Right to a Speedy Trial Was Not Violated.*

■ White, for the first time on appeal, raises the argument that his right to a speedy trial, as guaranteed by the sixth and fourteenth amendments to the United States Constitution,[9] was violated.[10] This court has long recognized that the sixth amendment guarantee of the right to a speedy trial is a fundamental right afforded to a criminal defendant. *State v. O'Daniel,* 62 Haw. 518, 524, 616 P.2d 1383, 1388 (1980) (citing *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). Accordingly, we review White's claim pursuant to the plain error standard.

■ This court determines whether a defendant's constitutional right to a speedy trial under either the sixth amendment to the United States Constitution or article I, section 14 of the Hawai'i Constitution (1978)[11] is violated by applying the four-part test articulated in *Barker, supra. State v. Dwyer,* 78 Hawai'i 367, 371, 893 P.2d 795, 799 (1995). The four *Barker* factors are: (1) length of delay; (2) the reasons for the delay; (3) the defendant's assertion of his or her right to

---

**9.** The sixth amendment to the United States Constitution reads in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...."

The fourteenth amendment to the United States Constitution provides in relevant part that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

**10.** On appeal, White does not raise the issue of excessive pre-indictment delay, and we do not address it.

**11.** Article I, section 14 of Hawai'i Constitution (1978) provides in relevant part that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury...."

speedy trial; and (4) prejudice to the defendant. *Id.* (citing *Barker*, 407 U.S. at 530, 92 S.Ct. 2182).

### 1. *Length of Delay*

██ The length of delay triggers the *Barker* analysis. *Dwyer*, 78 Hawai'i at 371, 893 P.2d at 799 (quoting *State v. Nihipali*, 64 Haw. 65, 68, 637 P.2d 407, 411 (1981)).

> Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependant upon the peculiar circumstances of the case.

*Barker*, 407 U.S. at 530–31, 92 S.Ct. 2182. *See also State v. Lau*, 78 Hawai'i 54, 62, 890 P.2d 291, 299 (1995) (citation omitted).

██ On these facts, the relevant inquiry is when the speedy trial clock began to run— the date of the initial arrest or the date of the indictment. As this court has observed, "it is either a formal indictment[,]or information[,] or else the actual restraint imposed by *arrest and holding to answer* a criminal charge that engages the particular protections of the speedy trial provision of the Sixth Amendment." *State v. Bryson*, 53 Haw. 652, 655, 500 P.2d 1171, 1173 (1972) (emphasis added) (quoting *United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)).

In *State v. Johnson*, 62 Haw. 11, 608 P.2d 404 (1980), this court recognized a distinction between an investigatory arrest, such as the one in the instant case, and one where a defendant is "held to answer" for a criminal offense. The defendant in *Johnson*, 62 Haw. 11, 608 P.2d 404, asserted that the HRPP Rule 48 clock began running at the date of his investigatory arrest. The prosecution argued that, because the defendant was released within twenty-four hours of his arrest without charges being filed against him, the arrest did not trigger HRPP Rule 48. This court agreed with the prosecution, reasoning that the term "arrest" in HRPP Rule 48 was meant to reach the same results as the statement in ABA Standards Relating to

Speedy Trial (approved Draft 1968) Section 2.2(a) at 19–20, to wit: "... if the defendant is *released outright some time after arrest* but thereafter is charged with the same offense for which the defendant was arrested and held to answer, the time *runs from the date of the filing of the charge.* Were it otherwise, the time for trial would begin running because of the action of the police ... even though the prosecutor later concluded he [or she] had insufficient evidence to file a charge and caused the outright release of the defendant."

*Id.* at 12, 608 P.2d at 405 (footnote omitted) (emphases in original). In so doing, this court implicitly recognized that an investigatory arrest did not amount to an arrest as a result of which a defendant was "held to answer" for a criminal offense.

Similarly, in construing the sixth amendment guarantee to a speedy trial, other courts have held that an investigatory arrest wherein a defendant was promptly released without being charged does not trigger the speedy trial clock. *See, e.g., United States v. Sorrentino*, 72 F.3d 294, 296–97 (2d Cir.1995) (holding that the speedy trial clock did not commence during an investigatory arrest where authorities released the defendant without filing charges against him); *United States v. Bloom*, 865 F.2d 485, 488, 490–91 (2d Cir.) (ruling that the constitutional right to speedy trial was not triggered by an investigatory arrest, where police took the defendant into custody and interrogated defendant for about six hours, but released the defendant without charging him with any wrongdoing), *cert. denied*, 490 U.S. 1027, 109 S.Ct. 1762, 104 L.Ed.2d 197 (1989); *United States v. Stierwalt*, 16 F.3d 282, 284 (8th Cir.1994) (observing that, "[a]lthough the actual restraints imposed by arrest and holding to answer a criminal charge will trigger Sixth Amendment speedy trial concerns," the right to speedy trial was not implicated where defendant was arrested but subsequently released without being charged) (internal quotation marks and citation omitted)).

In this case, police arrested White on March 15, 1995 and released him within forty-eight hours. Although White's liberty

may have been restrained during the period of his investigatory arrest, he was not "held to answer" for any pending criminal charge. Indeed, White was released without being charged with *any* criminal offense. Unlike the defendant in *Johnson*, 62 Haw. 11, 608 P.2d 404, however, White remained incarcerated because the investigatory arrest triggered the revocation of his parole on a prior offense. Although White spent about seventeen months in prison prior to being indicted, White was not "held to answer" for the burglaries for which he was tried. Instead, he was "held to answer" for the remainder of the sentence imposed upon him pursuant to a previous conviction because he violated the conditions of his parole. *See supra* section III.A.

■ Accordingly, the period for calculating the length of delay pursuant to the *Barker* analysis commences on the date the indictment was filed—August 27, 1996—and ends on the day White's jury was selected—February 2, 1998. The record reveals, however, that in the course of obtaining several continuances, White agreed to waive his "[HRPP] Rule 48 . . . and Speedy Trial rights" from October 30, 1996 to May 5, 1997. Thus, the relevant periods for calculating the length of the delay in this case are from August 27, 1996 to October 29, 1996 (64 days) and May 6, 1997 to February 2, 1998 (273 days) (for a combined period of 337 days or about eleven months). The cumulative period of about eleven months between White's indictment and the day his trial commenced warrants inquiry into the other *Barker* factors. *See Lau*, 78 Hawai'i at 62–63, 890 P.2d at 299–300.

## 2. Reasons for the Delay

■ During the eleven-month delay, White requested that trial be continued, filed a motion for withdrawal of counsel, and filed two motions to dismiss. At the time of trial, the delay due to these requests amounted to 135 days or about four and a half months.[12] On the other hand, the postponement resulting from three motions to continue trial submitted by the prosecution amounted to 129 days or about four months.[13] Two of the prosecution's motions to continue trial were due to the unavailability of material witnesses and one was due to a firm trial date set in another case.

As we observed in *Lau*,

"different weights should be assigned to different reasons" for the delay. As noted in *Barker*, "a deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government," while "a more neutral reason such as negligence or overcrowded courts should be weighted less heavy."

*Lau*, 78 Hawai'i at 63, 890 P.2d at 300 (citations and brackets omitted). In this case, the prosecution's motions to continue trial based on the unavailability of material witnesses do not reflect a deliberate attempt to delay the trial, and are, thus, "weighted less heavy" against the prosecution. Conversely, "[w]here the filing of defense motions and the delay inherent therein are principally responsible for lapse of time, . . . [there is] little sympathy for the defendant who then claims his right to speedy trial has been violated thereby." *Nihipali*, 64 Haw. at 69, 637 P.2d at 411.

12. The following motions by White are responsible for the corresponding delays: (1) April 23, 1997 motion for withdrawal of counsel—May 6, 1997 to June 30, 1997 (56 days); (2) June 3, 1997 motion to dismiss—June 3, 1997 to June 17, 1997 (14 days that overlap with the delay attributable to April 23, 1997 motion for withdrawal of counsel); (3) September 18, 1997 motion to continue trial—September 18, 1997 to November 24, 1997 (67 days); and (4) December 19, 1998 motion to dismiss—December 19, 1997 to December 31, 1997 (12 days).

13. The following motions by the prosecution are responsible for the following delays: (1) June 3, 1997 motion to continue trial—June 3, 1997 to August 18, 1997 (76 days minus 27 days attributable to overlap with White's April 23, 1997 motion for withdrawal of counsel equals 49 days); (2) June 19, 1997 motion to continue trial—August 19, 1997 to September 22, 1997 (34 days minus 4 days attributable overlap with White's September 18, 1997 motion to continue trial equals 30 days); and (3) November 19, 1997 motion to continue trial—November 19, 1997 to January 20, 1998 (62 days minus 12 days attributable to overlap with White's December 19, 1997 motion to dismiss equals 50 days).

On balance, because White contributed in substantial part to the delay which he now claims prejudiced him, and the prosecution's motions to continue trial do not appear to have been calculated to cause unreasonable delay trial, we hold that the second *Barker* factor weighs in favor of the prosecution.

### 3. *Assertion of the Right to a Speedy Trial*

■■ On December 19, 1997, White filed his HRPP Rule 48 motion to dismiss. This court has held that "unless the motion to dismiss is accompanied in some way by an alternative demand, even if made implicitly, for a speedy trial, it does not necessarily mean that the defendant wants to be tried immediately." *Lau*, 78 Hawai'i at 64, 890 P.2d at 301 (quoting *State v. Wasson*, 76 Hawai'i 415, 421, 879 P.2d 520, 526 (1994)). Indeed, " 'in the absence of some other indication that a defendant making a motion to dismiss actually desires a speedy trial, the motion, standing alone, does not weigh in his or her favor.' " *Id.* See also *Wasson*, 76 Hawai'i at 421, 879 P.2d at 526 (observing that "a defendant who believes that a delay in his or her trial is advantageous might move for dismissal on speedy trial grounds, hoping that if the motion is denied, trial will continue to be postponed").

White, in his HRPP Rule 48 motion to dismiss or during the hearing on that motion, did not demand to be tried immediately. Instead, White urged that "the charges against [him] should be dismissed *with prejudice.*" Accordingly, White did not assert his right to a speedy trial, and the third *Barker* factor weighs in favor of the prosecution.

### 4. *Prejudice to Defendant*

This court has previously recognized the following three interests, by which the right to speedy trial seeks to: (1) prevent oppressive pretrial incarceration; (2) minimize anxi-

ety of the accused; and (3) limit the possibility that the defense will be impaired. *Lau*, 78 Hawai'i at 64, 890 P.2d at 301 (quoting *Barker*, 407 U.S. at 532, 92 S.Ct. 2182).

In this case, White argues that imprisonment impaired his ability to confer with his late girlfriend, who was a potential defense witness. White claims that she died sometime prior to his trial, and hence, could not testify. It is unclear, however, whether White's late girlfriend died during the delay. Assuming that his late girlfriend did pass away during the delay, the fourth *Barker* factor would weigh in favor of White.

### 5. *Conclusion on the Speedy Trial Claim*

On balance, even assuming that White's late girlfriend died during the delay, such prejudice is substantially outweighed by White's substantial responsibility for the pretrial delay and his failure to assert his right to a speedy trial. Thus, allowing White's case to proceed to trial after an eleven-month delay did not amount to plain error.

### C. *The Motions Court Did Not Reversibly Err in Denying White's Motion to Compel Discovery of Police Reports Pertaining to Cabrera.*

■■ Although a defendant should be afforded the opportunity to subpoena *relevant* documents, a defendant may not use the subpoenas duces tecum to launch a fishing expedition. *State v. Mason*, 79 Hawai'i 175, 184, 900 P.2d 172, 181 (App.), *cert. denied*, 79 Hawai'i 341, 902 P.2d 976 (1995). *See also State v. Pacarro*, 61 Haw. 84, 87, 595 P.2d 295, 298 (1979). "This court reviews questions of relevancy, within the meaning of Hawai'i Rules of Evidence (HRE) Rules 401 (1993) [14] and 402 (1993) [15] under the right/wrong standard, inasmuch as the application of those rules can yield only one correct result." *State v. Wallace*, 80 Hawai'i 382,

---

**14.** Hawai'i Rules of Evidence (HRE) Rule 401 (1993) provides:

Definition of "relevant evidence". "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

**15.** HRE Rule 402 (1993) provides:

Relevant evidence generally admissible; irrelevant evidence inadmissible. All relevant evidence is admissible, except as otherwise provided by the Constitutions of the United States and the State of Hawaii, by statutes, by these rules, or by other rules adopted by the supreme court. Evidence which is not relevant is not admissible.

409, 910 P.2d 695, 722 (1996) (footnotes altered) (internal quotation marks omitted).

■ Here, White claims that the subpoenaed police reports, detailing Cabrera's past and pending charges and investigations involving Cabrera from March 1995, were relevant to (1) support White's theory that Cabrera was a seasoned burglar who was the actual culprit who perpetrated the burglaries himself and (2) substantiate the theory that Cabrera lied about White's involvement in the burglaries to ensure that he would receive a reduced sentence on the crimes for which Cabrera pled guilty and would not be charged for *pending* crimes in which he was a suspect.

Regarding White's first claim, whether or not *Cabrera* was a seasoned burglar did not make it less probable that White committed the burglaries charged, the salient issue in this case.

■ As to his second claim, reports concerning pending charges and investigations involving Cabrera appear relevant to Cabrera's motivation to fabricate testimony against White. Under HRE Rule 609.1 (1993),[16] evidence of bias, interest, and motive are relevant to Cabrera's credibility. The denial of White's requested reports allegedly prevented him from ascertaining benefits that Cabrera may have obtained *beyond* the scope of Cabrera's plea agreement with the prosecution in this case. To the extent that the requested reports contained information about any pending charges or investigations involving Cabrera, such reports were germane to Cabrera's motive to fabricate testimony. Accordingly, the motions court erred in concluding that pending charges and investigations involving Cabrera, and thus any reports containing such information, were not relevant to the instant case. The impact of such error, however, was sufficiently blunted by Cabrera's admission on cross-examination that, in exchange for testifying against White, Cabrera received a reduced sentence for the five burglaries to which he pled guilty and a commitment from the prosecution not to bring four other burglary charges against Cabrera. Additionally, White's testimony at trial that the denial of his discovery request did not preclude him from arguing that Cabrera was the culprit and that White merely discovered the tickets.

Accordingly, there is no reasonable possibility that the error by the motions court in concluding that the subpoenaed reports pertaining to other pending investigations or charges involving Cabrera were irrelevant might have contributed to the conviction. Thus, we hold that the error was harmless beyond a reasonable doubt.

D. *The Trial Court Properly Limited the Scope of White's Cross-examination of Cabrera.*

■ "The credibility of a witness may be attacked by evidence of bias, interest[,] or motive." HRE Rule 609.1. The extent of cross-examination, however, rests within the sound discretion of the trial court. *State v. Kauhi,* 86 Hawai'i 195, 197, 948 P.2d 1036, 1038 (1997).

["]While the right of cross-examination protected by the Confrontation Clause of the Sixth Amendment, 'may not be unduly restricted, ... it has never been held that this right is absolutely without restriction.' " *[State v.] Corella,* 79 Hawai'i [255,] 260, 900 P.2d [1322,] 1327 [ (App. 1995) ] (citations omitted). However, the trial court's discretion in exercising control and excluding evidence of a witness's bias or motive to testify falsely becomes operative only after the constitutionally required threshold level of inquiry has been afforded the defendant.... "When the trial court excludes evidence tending to impeach a witness, it has not abused its discretion as long as the jury has in its possession sufficient information to appraise the biases and motivations of the witness." *United States v. Easter,* 66 F.3d 1018, 1022–23 (9th Cir.1995) (citations omitted), *cert. denied,* [516] U.S. [1150], 116 S.Ct. 1026, 134 L.Ed.2d 104 (1996).

---

**16.** HRE Rule 609.1 (1993) provides in relevant part:

**Evidence of bias, interest, or motive.** (a) General rule. The credibility of a witness may be attacked by evidence of bias, interest, or motive.

*Balisbisana,* 83 Hawai'i at 114, 924 P.2d at 1220.

■ In this case, the trial court acted within its discretion in refusing to allow White to cross-examine Cabrera on prior convictions or bad acts that were unrelated to the charges against White. During the course of cross-examination, White's counsel elicited the following testimony from Cabrera: (1) Cabrera was arrested for burglary in the vicinity of University Pet Center on March 15, 1995, as he hid underneath a parked truck; (2) he told police that he wanted to make a deal with the police so that he could go home; (3) in response to a detective's inquiry about why he was willing to testify against White, Cabrera answered, "So I can get nothing charged against me"; (4) although he initially denied being involved in the burglary of Creative Holidays, Cabrera later admitted to being White's lookout; (5) Cabrera agreed to a plea agreement with the prosecution wherein (a) he would not receive a ten-year extended term of incarceration for each of the five burglaries to which he pled guilty, (b) his mandatory minimum sentence would be reduced by six months in return for his testimony against White, and (c) the prosecution agreed to refrain from bringing four other burglary charges against Cabrera.

Based on the foregoing testimony, it appears that the jury had sufficient information to gauge adequately Cabrera's credibility and to appraise his motivation to fabricate testimony against White. Accordingly, we hold that the trial court did not abuse its discretion in limiting the scope of White's cross-examination of Cabrera.

### III. CONCLUSION

Based upon the foregoing discussion, we affirm White's conviction, judgment, and sentence for burglary in the second degree.