STATE of Alaska, Appellant,

v.

Stanley M. WALKER, Appellee.

No. A–10844.

Court of Appeals of Alaska.

Aug. 3, 2012.

Chris Carpeneti, Assistant District Attorney, Bethel, and John J. Burns, Attorney General, Juneau, for the Appellant.

Tracey Wollenberg, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

*OPINION*

MANNHEIMER, Judge.

This appeal arises from litigation in the superior court on the issue of whether the defendant should receive credit against his sentence for various periods that he spent in residential treatment. For the reasons explained here, we must send this case back to the superior court because of obvious errors in the superior court's ruling.

*The history of Walker's case from the time of his original sentencing until the time, years later, when he refused further probation and was ordered to serve the remainder of his suspended term of imprisonment*

In 1994, in superior court file number 4BE–94–279 Cr, Stanley M. Walker was convicted of second-degree sexual abuse of a minor. He received a sentence of 4 years' imprisonment, but with 3 years, 10 months suspended (*i.e.,* only 2 months to serve). In 1995, while Walker was on probation in the 1994 case, he again committed second-degree sexual abuse of a minor—giving rise to his conviction in the present case, superior court file number 4BE–95–1200 Cr.

In July 1996, the superior court sentenced Walker for the 1995 offense and for the violation of probation in the 1994 case. For the 1995 offense, the superior court imposed a sentence of 8 years' imprisonment with 6 years suspended. For the probation violation in the 1994 case, the court imposed 2 years of Walker's previously suspended jail time (consecutive to the just-imposed sentence in the 1995 case).

Thus, at the conclusion of this 1996 sentencing hearing, Walker's composite sentence for the 1994 and 1995 offenses was 4 years and 2 months to serve, with an additional 7 years, 10 months suspended. Of this suspended jail time, 1 year and 10 months remained from Walker's 1994 sentence, while 6 years was imposed as part of his 1995 sentence.

Starting in 2000, Walker repeatedly violated the conditions of his probation. As a result of these violations, he little by little served a large portion of his suspended imprisonment. Finally, in September 2009, Walker rejected further probation, and the superior court imposed the remaining 26 months of his suspended imprisonment.

*The litigation on the issue of whether Walker should receive credit against his sentence for the time he spent in residential treatment*

The imposition of the last 26 months of Walker's sentence seemingly ended the sentencing litigation in Walker's case. However, about eight months later, in May 2010, Walker filed a motion asking the superior court to give him credit against this 26–month sentence for five periods of time that Walker had spent in various residential treatment facilities during the years he was on probation. According to Walker, these five periods of residential treatment totaled nearly one year. In chronological order, these five periods were:

(1) the 10 days that Walker spent at the Ralph Perdue Center in Fairbanks from August 8, 2000 through August 18, 2000;

(2) the 120 days that Walker spent at the NorthStar Center in Fairbanks from April 30, 2001 through August 28, 2001;

(3) the 105 days that Walker spent at the NorthStar Center from October 15, 2001 through January 28, 2002;

(4) the 42 days that Walker spent at the Hudson Lake Healing Camp near Copper Center from July 22, 2002 through September 2, 2002; and

(5) the 67 days that Walker spent at the NorthStar Center from June 9, 2005 through August 15, 2005.

In his motion, Walker mistakenly told the superior court that these five periods totaled 346 days. In fact, they total 344 days.

The State opposed Walker's request—not based on Walker's calculations, but rather based on this Court's decision in *Triplett v. State*, 199 P.3d 1179 (Alaska App.2008). In *Triplett*, we held that defendants are not entitled to credit against their sentences for time they spend in a residential facility following their sentencing, as a condition of probation. *Id.* at 1181.

Walker filed a reply in which he argued that the *Triplett* decision was not controlling authority under the facts of his case. According to Walker, the defendant in *Triplett* was ordered into residential treatment by the Parole Board as a condition of *parole*, and Walker contended that the decision in *Triplett* hinged on this fact. Walker declared that his case was materially different from the facts of *Triplett* because he (Walker) was ordered into residence at the various treatment programs as a condition of his probation.

Walker's characterization of *Triplett* was incorrect.

The *Triplett* opinion states that the Parole Board released Triplett "[on] discretionary parole ... to the Salvation Army Adult Rehabilitation Program." 199 P.3d at 1180. However, it appears (from the briefs filed in *Triplett*) that when the Parole Board released Triplett on parole, Triplett may have begun serving his probation at the same time (because he was released from incarceration).[1] In any event, the *Triplett* opinion explains that Triplett was sent to the Salvation Army treatment program because "[t]he

---

1. See the three briefs filed in Court of Appeals File No. 9968.

conditions of Triplett's *probation* required him to complete a substance abuse program at the direction of his probation officer, including residential treatment of up to one year." *Id.* at 1179 (emphasis added). Seemingly, then, Triplett (like Walker) was sent to residential treatment as a condition of his probation.

But more importantly, our decision in *Triplett* did not hinge on whether Triplett was on probation or parole. It is true that the lower court based its ruling on this distinction. *See id.* at 1180. But this Court's decision was based on the wording of AS 12.55.055(c), which states that defendants are entitled to credit against their sentences "for time spent in custody *pending trial, sentencing, or appeal.*" Focusing on this italicized language, we held that Triplett was not entitled to credit against his sentence for the time spent in residential treatment because Triplett had already been sentenced, and because he had no appeal pending: "Triplett did not spend his time in residential treatment while 'pending trial, sentencing, or appeal,' so he did not qualify for credit under AS 12.55.025(c) for the time he served in treatment." *Triplett*, 199 P.3d at 1181.

Despite these flaws in Walker's interpretation of *Triplett*, the superior court granted Walker's motion and gave him credit against his sentence for all of the 346 days he claimed. Although the superior court did not cite *Triplett* in its written decision, the court repeatedly stated, with respect to each of the five periods of residential treatment, that Walker resided in these facilities "as a condition of probation". From this, we infer that the superior court was persuaded by, and endorsed, Walker's mistaken theory that the *Triplett* decision only applied to defendants who are sent to residential treatment as a condition of parole, and that *Triplett* did not apply to defendants who spend time in residential treatment as a condition of probation.

Following the superior court's decision to grant Walker the 346 days of credit, the State initiated this appeal.

*The issues raised in this appeal*

Ostensibly, this appeal raises the same issue that was raised in the superior court: whether Walker is entitled to credit against his sentence for the five periods he spent in residential treatment. But as we are about to explain, this question appears to be largely moot. The record shows that, of the 344 days that Walker claims, Walker had *already* been granted credit against his sentence for 267 days of those days before the superior court issued its decision (*i.e.,* the decision challenged in this appeal).

This appeal also raises a substantial issue regarding appellate procedure—in particular, the scope of an appellee's ability to argue for affirmance of the lower court's decision on grounds that the lower court did not rely on.

We turn, then, to the issues presented in the parties' briefs.

The State's brief to this Court is fairly straightforward and short. The State argues that *Triplett* controls all post-sentencing situations, regardless of whether a defendant is on probation or parole, and thus the superior court violated *Triplett* when the court awarded any sentence credit to Walker.

In Walker's responding brief, his appellate attorney does not defend the superior court's ruling—the ruling, based on Walker's trial attorney's argument, that *Triplett* applies only to residential treatment that is required as a condition of parole, and not to treatment that is required as a condition of probation. Instead, Walker's appellate attorney acknowledges that the superior court's ruling in this case was based on a misunderstanding of *Triplett*. Walker's attorney concedes that the ruling in *Triplett* did not hinge on the defendant's status as a probationer or a parolee—that, instead, we held that the defendant "was not entitled to credit against his ... sentence [because the residential treatment] was not 'pending trial, sentencing, or appeal' as required by AS 12.55.055(c)."

Nevertheless, Walker's appellate attorney argues that the superior court reached the correct result, albeit for the wrong reason.

First, Walker presents a new *factual* argument: Walker now contends (contrary to the position he took in the superior court) that, with respect to the first four of the five periods of residential treatment at issue in this case, he did *not* serve this time in resi-

dential treatment as a condition of probation. Rather, Walker now asserts, he was sent to these residential facilities pursuant to conditions of *bail*—conditions of release imposed on Walker by the superior court while the various petitions to revoke his probation were pending.

Based on his contention that his first four periods of residential treatment were the result of his pre-disposition bail conditions, Walker argues that he is entitled to credit against his sentence for this residential treatment, even under *Triplett*. Walker notes that our decision in *Triplett* was premised on AS 12.55.025(c), which states that defendants shall receive credit for the time they spend in custody pending sentencing. Walker argues that this credit-for-time-served rule applies not only to a defendant's original sentencing, but also to any subsequent sentencings that occur when the defendant's probation is revoked. Thus, according to Walker, even under *Triplett*, he is entitled to credit for the total of 277 days that he spent in residential treatment during the first four periods at issue in this case.

With respect to the fifth period of residential treatment (the 67 days that Walker spent at the NorthStar Center in June, July, and August 2005), Walker presents a new *legal* argument. Walker concedes that he was sent to the NorthStar Center in the summer of 2005 as a condition of his probation—and that therefore, under *Triplett*, he would not be entitled to credit against his sentence. Nevertheless, Walker argues that he should receive these 67 days of credit against his sentence—because (he asserts) *Triplett* was wrongly decided.

Finally, Walker argues that, regardless of the merits of the foregoing two arguments, it would be a violation of the constitutional guarantees of due process and equal protection, as well as a violation of the constitutional protection against double jeopardy, if Walker were denied credit against his sentence for the five periods of residential treatment.

In sum, Walker wishes to litigate this appeal on theories that are completely different—both factually and legally—from the factual and legal considerations that the su-

perior court relied on when it made its ruling.

*Our examination of the record, and why it leads us to conclude that the superior court's order must be vacated—because it appears that Walker had already received credit against his sentence for most of the 344 days at issue in this case*

■ It is well established that an appellee—*i.e.*, a party defending the lower court's judgement—"may seek to defend [the] judgment on any basis established by the record, whether or not it was relied on by the trial court or even raised before the trial court." *Demoski v. New*, 737 P.2d 780, 786 (Alaska 1987); *see also Millman v. State*, 841 P.2d 190, 195 (Alaska App.1992).

■ However, when an appellee argues that the lower court's ruling should be upheld on an alternative ground, this alternative justification for the lower court's ruling must be clearly revealed by the record of the lower court's proceedings. In other words, the appellee's argument must rest on undisputed facts. *See Koyukuk River Tribal Task Force on Moose Management v. Rue*, 63 P.3d 1019, 1021 n. 8 (Alaska 2003); *Linehan v. State*, 224 P.3d 126, 140 (Alaska App.2010).

Accordingly, this Court's first task (when evaluating the claims raised in Walker's brief) is to examine the record to see whether, as Walker contends, it is undisputed that his first four periods of residential treatment were imposed as conditions of bail release rather than as conditions of his probation.

With regard to the first period of residential treatment—the 10 days that Walker spent at the Ralph Perdue Center from August 8, 2000 through August 18, 2000—the record supports Walker's assertion that he was sent to this residential treatment as a condition of bail release pending the court's resolution of a petition to revoke Walker's probation.

Likewise, with regard to the second and third periods of residential treatment—the 120 days that Walker spent at the NorthStar Center from April 30, 2001 through August 28, 2001, and the 105 days that Walker spent at the NorthStar Center from October 15,

2001 through January 28, 2002—the record again supports Walker's assertion that he was sent to the NorthStar Center (twice) as a condition of bail release pending the court's resolution of petitions to revoke Walker's probation.

However, the record also shows that Walker has apparently already received credit against his sentence for these second and third periods of residential treatment—a combined credit of 225 days for Walker's residence at the NorthStar Center.

One of the transcripts prepared for this appeal is the transcription of a "status hearing" held in Walker's case in front of Superior Court Judge Ralph Beistline on January 29, 2002. At that hearing, Walker's attorney announced that he and the State had reached an agreement to resolve the pending revocation petition. Under this agreement, Walker would admit that he violated his probation, and he would be sentenced to "time served".

To clarify the meaning of "time served", the defense attorney added, "[Walker] has been in custody since [last] April 4th." In other words, the defense attorney told Judge Beistline that Walker had been in continuous custody for the preceding ten months—a time period that covered all 225 days of Walker's residence at the NorthStar Center. (Walker's first 120 days at the NorthStar Center began on April 30th.)

Judge Beistline adopted the proposed settlement of the case, and he accordingly sentenced Walker to "time served". With the parties' agreement, the judge applied this time to the suspended imprisonment in Walker's 1994 case, so that Walker still had the original 6 years of suspended time in his 1995 case.

Thus, the record shows that Judge Beistline already gave Walker credit against his sentence for the second and third periods of residential treatment at issue in this appeal: the 120 days that Walker spent at the NorthStar Center from April 30, 2001 through August 28, 2001, and the 105 days that Walker spent at the NorthStar Center from October 15, 2001 through January 28, 2002. (We note that Walker's latter period of residence at the NorthStar Center ended the day before the disposition hearing in front of Judge Beistline.)

Turning to Walker's fourth period of residential treatment—the 42 days that he spent at the Hudson Lake Healing Camp from July 22, 2002 through September 2, 2002—the record once more supports Walker's assertion that he was sent to Hudson Lake as a condition of bail release pending the court's resolution of petitions to revoke Walker's probation.

However, the record also again shows that Walker already received credit against his sentence for these 42 days.

The revocation petitions that were pending against Walker when he was sent to Hudson Lake in the summer of 2002 were ultimately resolved at a disposition hearing held on April 15, 2003 in front of Superior Court Judge Dale Curda (who was also Walker's original sentencing judge).

During this disposition hearing, Judge Curda asked the parties how much time remained of the original 3 years, 10 months' suspended jail time that Walker received in the 1994 case. The judge suggested that Walker's remaining suspended time in the 1994 case should be at least 3 years—apparently forgetting that he, himself, imposed 2 of those years when, in July 1996, he sentenced Walker for the 1995 offense and revoked his probation in the 1994 case.

Walker's probation officer replied that she did not know exactly how much suspended time remained in the 1994 case, because Judge Beistline had sentenced Walker to "time served" rather than to a precise number of months or years. However, the probation officer told Judge Curda that Walker must have less than 3 years remaining on his 1994 sentence—because "Mr. Walker has done a substantial amount of time at the NorthStar Center, which he was [already] given credit for[.]" The probation officer further explained that, following the disposition hearing in front of Judge Beistline on January 29, 2002, "Mr. Walker was released from NorthStar Center [and] given credit for time served [there] in the '94 case."

The probation officer then described how Walker was arrested on July 12, 2002, for

violating his probation by consuming alcohol—and that, while the petition to revoke Walker's probation was pending, he was sent to the Hudson Lake Healing Camp from late July until early September.

A few minutes later in this hearing, Walker's attorney asked Judge Curda to sentence Walker to "time served". The defense attorney told the judge that this was "not an insignificant amount of time"—because Walker had spent time at the NorthStar Center, because Walker had already "served 41 [*sic:* 42] days [of] in-patient treatment [at Hudson Lake]", and because Walker had been incarcerated from September 29, 2002 until January 17, 2003.

Ultimately, Judge Curda accepted the defense attorney's sentencing recommendation: he sentenced Walker to "time served" in the 1994 case. Like Judge Beistline, Judge Curda decided to leave Walker with all 6 years of suspended jail time in his 1995 case, to act as a "big deterrent". To achieve this goal, Judge Curda announced that he would not impose any of Walker's suspended jail time in the 1995 case, but only in the 1994 case. Thus, Walker's sentence of "time served" was applied against Walker's then-remaining suspended jail time in the 1994 case.

Judge Curda remarked that he did not think Walker had "any appellate issues" arising from the sentencing proceeding because "[the court had] imposed ... what [Walker's attorney] asked for ..., time served." The judge then added, "And it sounds to me like ['time served' is] a significant amount of time. I would say ... probably upward [of] six, at least six months."

As we explained above, Walker's attorney told Judge Curda that Walker had been incarcerated from September 29, 2002 to January 17, 2003. In other words, Walker spent less than 4 months in jail in connection with the probation revocation proceedings. Thus, when Judge Curda stated that Walker's "time served" amounted to "at least six months", the judge must have been adding in the 42 days that Walker spent in residential treatment at Hudson Lake—just as Walker's attorney asked him to do.

Thus, again, the record shows that Walker already received credit against his sentence for the fourth period of residential treatment at issue in this appeal—the time that Walker spent at the Hudson Lake Healing Camp.

With respect to the fifth period of residential treatment at issue in this appeal—the 67 days that Walker spent at the NorthStar Center from June 9, 2005 through August 15, 2005—Walker concedes that this period of in-patient treatment was imposed as a condition of Walker's probation, and not as a bail condition.

To sum up this discussion:

Walker claims that, of the combined 344 days he spent in residential treatment, 277 of these days (in other words, all but the 67 days that Walker spent in residence at the NorthStar Center in the summer of 2005) were the result of bail conditions, not conditions of probation. The record bears this out. However, the record also shows that, with the possible exception of the 10 days that Walker spent at the Ralph Perdue Center in August 2000, Walker has already received credit against his sentence (his sentence in the 1994 case) for all of these days.

This means that the ruling at issue in this appeal—the superior court's order giving Walker *additional* credit against his sentence for these same days of in-patient treatment—is illegal.

■ When a defendant (like Walker) receives consecutive sentences, the defendant is entitled to only a single day of credit against the *aggregate* of their sentences for each day spent in prison or in a residential treatment program with the attributes of incarceration. *Endell v. Johnson,* 738 P.2d 769, 771 (Alaska App.1987). Since Walker has apparently already received credit against his 1994 sentence for at least 267 of the days of in-patient treatment at issue in this case, the superior court had no authority to give Walker a second credit against his 1995 sentence for these same days.

We wish to emphasize that our conclusion must, of necessity, remain somewhat tentative. As we have explained, these issues of fact were never litigated in the superior court, and the superior court made no find-

ings regarding them. Our knowledge of these matters is confined to what we can read in the appellate record.

The transcripts of the various disposition hearings show that the superior court ordered that Walker receive credit against his 1994 sentence for these 267 days of residential treatment (specifically, the 120 days that Walker spent at the NorthStar Center from April through August 2001, the additional 105 days that Walker spent at the NorthStar Center from October 2001 through January 2002, and the 42 days that Walker spent at the Hudson Lake Healing Camp from July through September 2002).

It is conceivable that the Department of Corrections never actually gave Walker credit against his 1994 sentence for all of these days. However, the precise question before us is not whether the Department of Corrections ultimately gave Walker the 267 days of credit that the superior court ordered. Rather, the question is whether Walker has presented us with an undisputed independent ground for affirming the superior court order that is currently in front of us—the order giving Walker additional credit against his sentence for these same days.

Rather than providing an independent ground to affirm the superior court's order, our research into the superior court proceedings has revealed that there is good reason to believe that the superior court order in front of us is, in main part, illegal.

*Why Walker is not entitled to argue for the first time on appeal that our decision in Triplett should be overruled*

■ As we explained earlier, Walker concedes that his fifth period of residential treatment (the 67 days that he spent at the NorthStar Center from June 9, 2005 through August 15, 2005) was imposed as a condition of his probation—and that, under *Triplett*, he is not entitled to credit against his sentence for these 67 days. Nevertheless, Walker asks us to affirm the superior court's decision awarding him credit for these 67 days. Walker argues that this is the correct result

because *Triplett* should be overruled—either because it was wrongly decided (as a matter of statutory construction) or, if correctly decided, because it yields results that are unconstitutional.

Walker never attacked the validity or constitutionality of the *Triplett* decision in the superior court. Rather, Walker raises these claims for the first time on appeal.

Under Alaska law, an appellee can seek affirmance of the lower court's decision on any ground revealed by the record. But we do not think this rule can be applied as broadly as Walker now wishes.

In our prior decisions, we have allowed appellees to advance alternative grounds for affirmance when, given the undisputed facts, there was a clear legal justification for the result reached by the lower court, even if the lower court failed to articulate or identify this legal justification—or even if the lower court expressly (and mistakenly) rejected this legal justification for its action.[2] But Walker seeks to justify the lower court's decision by arguing that, given the undisputed facts of this case, the lower court's decision *would be correct if the law were different*—if our decision in *Triplett*, instead of being controlling authority, were to be overruled or declared unconstitutional.

We are not prepared to extend such latitude to an appellee. First, such a broad interpretation of the rule would give appellees an unfettered opportunity to inject new constitutional controversies into a case for the first time on appeal.

Second, it is a rare case where it is "clear" that a prior court decision should be overruled, or where it is "clear" that a court decision or statute is unconstitutional, either on its face or as applied. Walker's argument ultimately hinges, not on an assertion that the record clearly reveals an alternative justification for upholding the result reached by the lower court, but rather on the assertion that there are colorable reasons for changing

---

**2.** *See Millman v. State,* 841 P.2d 190, 195 (Alaska App.1992); *Russell v. Anchorage,* 626 P.2d 586, 588 n. 4 (Alaska App.1981) (grounds not relied on by the lower court); *Torrey v. Hamilton,* 872

P.2d 186, 188 (Alaska 1994); *Ransom v. Haner,* 362 P.2d 282, 285 (Alaska 1961) (grounds explicitly rejected by the lower court).

the law so that the lower court's decision becomes justifiable.

For these reasons, we conclude that Walker may not attack our decision in *Triplett* for the first time on appeal. Because of this, and because Walker concedes that, under *Triplett*, the superior court was wrong to give him credit against his sentence for the 67 days he spent at the NorthStar Center from June 9, 2005 through August 15, 2005, we reverse the superior court's decision regarding these 67 days.

*Conclusion*

The order of the superior court is VACATED. We remand Walker's case to the superior court so that, if Walker wishes, he can reformulate and renew his motion for credit against his 1995 sentence.

We do not retain jurisdiction of this case.