NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

EDWIN MONTAL MEDINA,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals Nos. A-12520 & A-12529
Trial Court Nos. 3AN-13-6960 CR &
3AN-10-11426 CR

O P I N I O N

No. 2590 — March 2, 2018

Appeal from the Superior Court, Third Judicial District, Anchorage, Paul E. Olson, Judge.

Appearances: Jaffer K. Khimani, Assistant Public Advocate, and Richard Allen, Public Advocate, Anchorage, for the Appellant. Patrick J. McKay, Jr., Assistant District Attorney, Anchorage, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, and Allard and Wollenberg, Judges.

Judge WOLLENBERG.

Edwin Montal Medina was ordered into residential treatment while he awaited the adjudication of a petition to revoke his probation. Medina's probation was ultimately revoked, but the court released him back to probation without imposing a sentence of imprisonment. The question presented in this appeal is whether Medina was

later entitled to seek credit for the time he spent in residential treatment after the court sentenced him to a term of imprisonment in connection with a *subsequent* probation revocation in the same case. For the reasons explained in this opinion, we conclude that the answer is yes.

Because we conclude that the answer is yes, we direct the superior court to reach the merits of Medina's request. That is, we direct the court to evaluate Medina's request under AS 12.55.027, the statute that sets out the criteria governing the award of jail credit for time spent in treatment.

*Underlying facts and proceedings*

In 2014, Edwin Montal Medina was on supervised probation in two cases. After the State alleged that Medina violated his probation in both cases, the superior court ordered Medina to enter residential treatment as a condition of bail pending resolution of the petitions to revoke his probation. Medina entered residential treatment at the Salvation Army Adult Rehabilitation Center.

Medina resided at the Salvation Army program for 184 days, and he successfully completed the program. At a subsequent hearing, the parties announced a plea agreement: because Medina had successfully completed treatment, he would admit the allegations, no term of incarceration would be imposed, and Medina would return to probation. The court accepted the agreement of the parties, and the court resolved the petitions to revoke probation by returning Medina to probation without imposing any portion of his suspended sentence. Medina did not, at that time, ask the court for credit for the time he had spent in residential treatment.

In 2015, the State again alleged that Medina had violated his probation. Ultimately, the parties reached a resolution calling for the imposition of a composite 150 days of Medina's previously suspended sentences.

Medina's attorney then moved for credit against this composite term of incarceration for the time Medina had spent at the Salvation Army residential treatment program in 2014. In support of this request, Medina's attorney relied on AS 12.55.027, the statute governing credit for time spent in treatment.

The State opposed the request, relying on a different statute, AS 12.55.025(c). Under AS 12.55.025(c), a defendant is entitled to "credit for time spent in custody pending trial, sentencing, or appeal, if the detention was in connection with the offense for which sentence was imposed[.]" The State argued that the time Medina spent in treatment in 2014 was not served "in connection" with his later 2015 probation violations, and thus, AS 12.55.025(c) precluded credit.[1]

The superior court denied Medina's request for credit. The court did not reach the question of whether the conditions of Medina's stay in the treatment program entitled him to credit under AS 12.55.027. Rather, adopting the State's argument regarding AS 12.55.025(c), the court ruled as a legal matter that Medina was not entitled to the requested credit because the time he had spent at the Salvation Army program was served in connection with his earlier 2014 probation violations, not the 2015 probation violations for which he was being sentenced. The court concluded that granting credit for Medina's earlier treatment would effectively give Medina a reserve of credit for use against any sentence later imposed for a subsequent probation violation.

Medina appeals the court's ruling.

---

[1] The State also initially argued that Medina's time in residential treatment was not served "pending trial, sentencing, or appeal," as required by AS 12.55.025(c). The State subsequently acknowledged that Medina's cases were in fact pending sentencing — *i.e.*, pending resolution of the 2014 petitions to revoke probation — when he resided at the Salvation Army program. The State therefore abandoned this claim. *Cf. Triplett v. State*, 199 P.3d 1179, 1181 (Alaska App. 2008) (denying credit, under AS 12.55.025(c), for time spent in residential treatment when that time was not served "pending trial, sentencing, or appeal").

*A note on the interplay between AS 12.55.025(c) and AS 12.55.027*

Alaska Statute 12.55.025(c) entitles defendants to "credit for time spent in custody pending trial, sentencing, or appeal, if the detention was in connection with the offense for which sentence was imposed[.]" Relying on this statute, the superior court denied Medina's request for credit against his sentence for time previously spent in residential treatment.

As an initial matter, we question whether AS 12.55.025(c) applies to Medina's request for credit. In a 1980 case, *Lock v. State*, the Alaska Supreme Court first recognized a defendant's entitlement to credit for time spent in substantially restrictive residential treatment as a condition of probation.[2] Lock argued that the phrase "in custody" as used in AS 11.05.040(a) — the precursor to AS 12.55.025(c) — should be interpreted broadly to include therapeutic programs in which the conditions of residence are so restrictive that they approximate custody.[3] The supreme court agreed.[4]

In a line of cases beginning with *Nygren v. State*, we then applied the reasoning of *Lock* to requests for credit for time spent in residential treatment as a condition of bail.[5] We interpreted AS 12.55.025(c) (which is substantially similar to former AS 11.05.040(a)) as requiring a court to grant a defendant credit for time spent

---

[2]  *Lock v. State*, 609 P.2d 539, 545 (Alaska 1980).

[3]  *Id.* at 542.

[4]  *Id.*

[5]  *See Nygren v. State*, 658 P.2d 141 (Alaska App. 1983); *see also McKinley v. State*, 275 P.3d 567 (Alaska App. 2012) (noting that the "*Nygren* line of cases" governed requests for jail credit for time spent in non-prison residential treatment for "close to a quarter-century").

in residential treatment under court order if the defendant was subject to restrictions approximating incarceration.[6]

Then, in 2007, the Alaska Legislature enacted a specific statute defining those situations in which a defendant may receive credit for time spent in non-prison treatment programs.[7] This statute, AS 12.55.027, supplanted the rule we had followed in the *Nygren* cases for determining whether a defendant's stay in a treatment program was sufficiently restrictive to entitle that person to credit.[8] Because AS 12.55.027 authorizes credit for treatment programs regardless of whether those programs would qualify as "custody" under AS 12.55.025(c), it is unclear whether we should look to AS 12.55.025(c) to answer other procedural questions surrounding the award of credit under such circumstances.

We need not determine the precise interplay between AS 12.55.025(c) and AS 12.55.027 because even assuming AS 12.55.025(c) applies to Medina's request for credit, we disagree with the superior court that this statute precludes credit under the circumstances of this case.

*Why we reverse the superior court's ruling*

We have recognized that AS 12.55.025(c) requires a sentencing court to grant credit for time served "'in connection' with the same offense."[9] The superior court's ruling in this case was premised on the notion that Medina's 2014 probation

---

[6] *Nygren*, 658 P.2d at 146.

[7] SLA 2007, ch. 24, § 20.

[8] *See McKinley*, 275 P.3d at 567-68.

[9] *See Marker v. State*, 829 P.2d 1191, 1194 (Alaska App. 1992) (discussing AS 12.55.025(c)).

violations and his 2015 probation violations were separate "offenses" for purposes of AS 12.55.025(c). But this premise is contrary to Alaska law.

Probation revocation proceedings are not independent criminal proceedings.[10] Rather, they are a continuation of the original criminal proceedings.[11] Accordingly, "[p]robation revocation . . . amounts to continuing punishment for the crime for which probation was originally imposed."[12]

This continuity is reflected in the responsibilities of the sentencing judge at a probation revocation hearing. When a judge is deciding what portion of a previously suspended term of imprisonment, if any, to impose, the judge must consider all available sentencing information, including "the seriousness of the original offense."[13] And when a judge determines that a probationer can no longer benefit from supervision, the judge "must carefully reevaluate all currently available information and impose a sentence that would have been appropriate for the original offense had the trial court known the new information at the initial sentencing."[14]

---

[10] *State v. Sears*, 553 P.2d 907, 910 (Alaska 1976); *Demientieff v. State*, 814 P.2d 745, 747 (Alaska App. 1991) (citing *Paul v. State*, 560 P.2d 754, 756 (Alaska 1977)).

[11] *See Kvasnikoff v. State*, 535 P.2d 464, 466 (Alaska 1975) (holding that a probation revocation hearing is a "supplemental proceeding" to the original proceeding placing the defendant on probation). *See also McRae v. State*, 909 P.2d 1079, 1083 (Alaska App. 1996).

[12] *Demientieff*, 814 P.2d at 747; *see also Toney v. State*, 785 P.2d 902, 903 (Alaska App. 1990).

[13] *DeMario v. State*, 933 P.2d 558, 562 (Alaska App. 1997); *Toney*, 785 P.2d at 903.

[14] *Luepke v. State*, 765 P.2d 988, 990-91 (Alaska App. 1988).

Other courts, including the United States Supreme Court, have similarly construed revocation and re-imprisonment for a probation or parole violation as punishment for the underlying criminal offense.[15]

Thus, probation violations are not new "offenses," separate and independent from one another and from the underlying criminal conviction. Rather, probation revocations relate back to the underlying criminal offense, constituting "continuing punishment for the crime for which probation was originally imposed."[16]

The superior court's reliance on AS 12.55.025(c) to deny Medina credit was therefore misguided. Both Medina's 184 days in treatment in 2014 and his 150-day term of incarceration in 2015 were "in connection with" his underlying criminal offenses.[17] Alaska Statute 12.55.025(c) did not bar credit, even though Medina's time in treatment occurred while he awaited adjudication of the earlier 2014 petition to revoke probation.[18]

---

[15] *See Johnson v. United States*, 529 U.S. 694, 700-01 (2000) ("attribut[ing] postrevocation penalties to the original conviction" and noting the constitutional questions that would otherwise be raised from treating postrevocation penalties as new punishment); *see also State v. Black*, 710 A.2d 428, 440 (N.J. 1998); *State v. Corkum*, 735 S.E.2d 420, 423 (N.C. App. 2012).

[16] *See Demientieff*, 814 P.2d at 747; *see also Toney*, 785 P.2d at 903.

[17] *Cf. Raymond v. State*, 2004 WL 1837708, at *3 (Alaska App. Aug. 18, 2004) (unpublished) (applying credit for time spent in custody on a violating conditions of release charge against sentence imposed for earlier DUI because the violating conditions of release charge was "sufficiently connected to" the DUI to satisfy AS 12.55.025(c)).

[18] *Cf. State v. Shetters*, 246 P.3d 332, 338 (Alaska App. 2010) (holding that mandatory parolees are entitled to credit for time served at a halfway house as a condition of their parole "if the Board later revokes their parole and orders them to serve some or all of their remaining sentence").

The opposite conclusion would have far-reaching implications, not only for those in residential treatment but also for those incarcerated. Because AS 12.55.025(c) does not distinguish between custody that results from residential treatment and custody that results from incarceration in a correctional institution, interpreting AS 12.55.025(c) to preclude credit for earlier excess time spent in treatment implies that credit should be likewise precluded for earlier excess time in jail in the same case.

Thus, under the trial court's rationale, a person who served excess time in jail while awaiting sentencing on a first probation violation would not be entitled to credit for that excess time when a later sentence was imposed for a second probation violation in the same case, since the excess time was not "in connection" with the first disposition hearing. But if this person later received the balance of his suspended sentence, without any credit for the excess prior service, that person would serve a sentence longer than his original sentence — an outcome that would raise significant constitutional issues.[19] Other courts have rejected this outcome.[20]

---

[19] *See, e.g.*, *Hester v. State*, 777 P.2d 217, 218-19 (Alaska App. 1989); *cf. North Carolina v. Pearce*, 395 U.S. 711, 718 (1969) (constitutional prohibition against double jeopardy requires credit against sentence imposed after retrial for time previously served in prison in connection with the same case).

[20] *See, e.g.*, *Corkum*, 735 S.E.2d at 425 (holding that defendant was entitled to credit against second violation of supervision for time spent in custody pending resolution of first violation of supervision, since he was "serving the same nine-month sentence that he would have served had post-release supervision been revoked following the first violation"); *Ex parte Canada*, 754 S.W.2d 660, 667-68 (Tex. Crim. App. 1988) (holding that denying credit to a parolee for time spent confined pursuant to a pre-revocation warrant who "has his parole continued only to have it later revoked is violative of the parolee's right of due course of law" under the Texas Constitution). *But see Bryant v. Warden*, 776 F.2d 394 (2d Cir. 1985) (denying request to offset sentence imposed for parole violation with time served on a prior parole violation).

Or, extending this logic further, a person who remained incarcerated on a new criminal charge prior to trial because of an inability to make bail, but who ultimately resolved his case through a plea agreement for an entirely suspended sentence, would not receive any credit against his suspended time if it were later imposed because of probation violations. This is precisely the type of inequity that AS 12.55.025(c) was designed to avoid.[21]

Our conclusion that Medina is entitled to credit (assuming he meets the requirements of AS 12.55.027) is bolstered by considerations of fairness and equity. Putting aside the formal question of whether credit is constitutionally mandated for time spent in restrictive rehabilitative programs (an issue we do not decide),[22] we agree with the Alaska Supreme Court's statement in *Lock* that there is a certain "unfairness [in] requiring a probationer . . . to participate in a treatment program which imposes substantial restraints on his liberty, and then upon a violation of his probation . . . imposing a sentence of imprisonment for the original offense, undiminished by the time

---

[21] *See Thompson v. State*, 496 P.2d 651, 656 (Alaska 1972); *cf. Smith v. State*, 685 So.2d 1362, 1363 (Fla. Dist. App. 1996) ("A prisoner sentenced to prison for violating probation which constitutes the second portion of a split sentence is entitled to credit for time actually served in prison prior to the commencement of the probationary term."); Neil P. Cohen, 2 *The Law of Probation and Parole* § 28:10, pp. 21-23 (2d ed. 1999) (noting that "[a]fter a probation revocation, most jurisdictions give full credit for time spent in jail prior to the initial criminal trial or while awaiting sentencing, unless such credit has already been given" and also that "credit for time in jail awaiting revocation, like credit for jail time prior to the original criminal trial, is usually given").

[22] *See Lock v. State*, 609 P.2d 539, 542 (Alaska 1980) (declining to address Lock's argument that double jeopardy protections mandate credit for time spent under the restrictions of a rehabilitation program).

spent in the treatment program."[23]  Accordingly, the *Lock* court held that a person is entitled to credit for time spent in sufficiently restrictive treatment as a condition of probation on a suspended imposition of sentence, notwithstanding the fact that granting such credit essentially allows for some level of immunity against a sentence for future probation violations.[24]

Moreover, under the superior court's ruling in Medina's case, entitlement to credit would essentially turn on the precise wording of a disposition, leaving credit open to arbitrary and unfair manipulation.  Whether a probationer received credit against his sentence would hinge, in part, on whether the defense attorney requested a "time served" rather than a "no time imposed" disposition.  Indeed, the State faults Medina's attorney for failing to do just that, arguing:  "Had Medina bargained for, and had the court ordered, Medina to be sentenced to 'time served,' he may be entitled to credit for the time spent in treatment because he would have had a sentence imposed for the 2014 probation violations."  But a defendant's entitlement to credit should not turn on such semantic distinctions.[25]

Ultimately, we conclude that any problem of "banking" credit against future sentences in the same case is outweighed by the fairness concerns we have explained here, as well as by the risk that defendants will improperly serve sentences longer than

[23]  *Id.* at 546.

[24]  *Id.*

[25]  *See generally Walters v. State*, 798 P.2d 357, 359 (Alaska App. 1990) (noting that "parolees and probationers should be treated with basic fairness" and holding that a prisoner should not be "unfairly and arbitrarily deprived of credit because of the failure to institute revocation proceedings in a prompt and timely manner").  *Cf. Wells v. State*, 706 P.2d 711, 714 (Alaska App. 1985) (holding that the legislature did not intend application of mandatory consecutive sentencing to turn on "such fortuitous and haphazard considerations" as whether a defendant had the foresight to arrange consolidated sentencing proceedings).

originally imposed.  We therefore reverse the superior court's ruling that Medina is not entitled to seek credit for the time he spent at the Salvation Army program in 2014.

*Why we remand for further consideration of Medina's request for credit under AS 12.55.027*

Our conclusion that AS 12.55.025(c) does not bar credit under these circumstances does not resolve this case.  As discussed earlier, the Alaska Legislature has enacted AS 12.55.027, which sets out criteria for determining whether a defendant's time in treatment qualifies for jail credit.  A court must evaluate a defendant's request for credit for treatment under AS 12.55.027 and determine whether the defendant's time in the treatment program qualifies for credit.  The statute also contains a time frame within which a defendant must generally notify the court of his request for credit, although there is a "good cause" exception for requests that fall outside this time frame.[26]

In the trial court, the State objected to Medina's request for credit based solely on the ground that AS 12.55.025(c) precluded credit.  Because the superior court adopted the rule that the State proposed, the court did not evaluate the conditions of Medina's residence at the Salvation Army program and did not determine how much credit, if any, Medina should receive under AS 12.55.127.  It is appropriate that these questions be resolved by the trial court in the first instance.

*Conclusion*

We REVERSE the trial court's order and REMAND this case to the trial court for reconsideration of Medina's request for credit under AS 12.55.027.

We do not retain jurisdiction of this case.

---

[26]  AS 12.55.027(e).