**Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000107
30-APR-2025
08:31 AM
Dkt. 163 MO**

NO. CAAP-24-0000107

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
MANU SORENSEN also known as ROSS MANU SORENSON,
Defendant-Appellant, and
ROBIN PAAKAULA also known as BOBBY,
Defendant-Appellee.


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO.1CPC-18-0001574)


MEMORANDUM OPINION
(By: Leonard, Acting Chief Judge, Hiraoka, and Guidry, JJ.)

Defendant-Appellant Manu Sorensen (**Sorensen**) appeals from the January 25, 2024 Amended Judgment of Conviction and Sentence (**Amended Judgment**), entered by the Circuit Court of the First Circuit (**Circuit Court**).[1]

I.    BACKGROUND

A.    Underlying Events

This case stems from an incident at a game room located on the second floor of a building on Kapiolani Boulevard in Honolulu.  On the night of September 29, 2018, Sorensen went to

---

[1]    The Honorable Faʻauuga L. Toʻotoʻo presided.

the game room with Robin Paakaula (**Paakaula**), Nalani Kaahu (**Kaahu**), and Damien Kaahu (**Damien**).  A struggle started between Paakaula and the game room cashier, Dylan Tavares-Fairchild (**Tavares-Fairchild**), after Paakaula attempted to take an envelope of money from Tavares-Fairchild.  During the course of this incident, Sorensen allegedly pulled out a handgun and fired it into the game room.  The bullet struck Jacob Feliciano (**Feliciano**), and he died from the gunshot wound the following morning.

B.    Pre-Trial Proceedings

On October 4, 2018, Plaintiff-Appellee State of Hawaiʻi (**State**) charged Sorensen by Indictment with:  Count 1, Murder in the Second Degree, in violation of Hawaii Revised Statutes (**HRS**) §§ 707-701.5 (2014) and 706-656 (2014); Count 2, Robbery in the First Degree, in violation of HRS § 708-840(1)(b)(i) (2014); Count 3, Carrying or Use of Firearm in the Commission of a Separate Felony, in violation of HRS § 134-21 (2023); Count 4, Carrying or Use of Firearm in the Commission of a Separate Felony, in violation of HRS § 134-21; and Count 5, Place to Keep Pistol or Revolver, in violation of HRS § 134-25 (2023).

On February 22, 2019, Sorensen filed [Sorensen's] Motion to Compel Discovery or, in the Alternative, Motion to Dismiss Indictment (**Motion to Compel**), seeking an order to compel disclosure of the identity and contact information of the confidential informant who facilitated the recovery of the firearm used in this case, and all reports relating to how the firearm came into the confidential informant's possession.  The

State opposed the Motion to Compel, seeking to invoke the privilege to withhold the confidential source's identity under Hawaii Rules of Evidence (**HRE**) Rule 510 and Hawaii Rules of Penal Procedure (**HRPP**) Rule 16(e)(5)(ii).

The Circuit Court heard the Motion to Compel on March 15, 2019 and April 4, 2019.  The following testimony was adduced at the Motion to Compel hearings.

On October 16, 2018, a person showed up at Honolulu Police Department (**HPD**) Corporal Ofeina Unga's (**Cpl. Unga**) home unannounced and told him that they had information about the location of a firearm that may have been used in a crime.  Cpl. Unga knew the unidentified person for over ten or fifteen years. The person stated that they heard some rumors that this particular firearm had been used in a "bad way" and that they "wanted to get it off the streets."  The person did not tell Cpl. Unga what crime they suspected the firearm was involved in, nor did they indicate that the firearm was in any way related to Sorensen.  Cpl. Unga stated that the person wanted to keep their information confidential, and that identifying the person would place them in harm's way.  Cpl. Unga testified that he did not have any personal knowledge of, nor did the person say, how the person came into possession of the pistol.  Cpl. Unga further stated that based on the information available to him, he did not have any reason to believe that the person was present at the incident on September 29, 2018.  Cpl. Unga did not ask the confidential informant about how they got information regarding

the firearm, and acknowledged there was potentially "a gold mine of information out there regarding this firearm."

Cpl. Unga instructed the person that if they came into possession of the firearm, they should drop off the firearm in Cpl. Unga's mailbox within thirty to forty minutes. The person left, and when Cpl. Unga checked the mailbox, he found a Smith & Wesson 9 millimeter handgun wrapped in an old rag or towel.

Cpl. Unga then called HPD Sergeant Joseph Lum (**Sgt. Lum**) to inform him that he recovered a firearm and to request that he send an officer to retrieve it. Sgt. Lum testified that Cpl. Unga relayed that a confidential source turned in a firearm, and that the firearm was related to this case. Sgt. Lum further stated that Cpl. Unga explained that "there was no way that this anonymous person was going to turn in this firearm unless they could remain anonymous."

Sgt. Lum assigned HPD Officer Colin Kim (**Off. Kim**) to retrieve the firearm from Cpl. Unga. Off. Kim transported the firearm back to the Kaneohe station and documented it into evidence. Off. Kim filed an evidence report about the retrieval of the firearm, but did not indicate in the report that Cpl. Unga initially had possession of the firearm. Cpl. Unga had requested Off. Kim to keep his name out of the report for unspecified reasons. Several months after the firearm's retrieval, Sgt. Lum requested that Cpl. Unga submit a follow-up report and Cpl. Unga did so on March 13, 2019.

The Circuit Court denied the Motion to Compel, stating:

> Based on the request for discovery here and what's on the
> record at this point in this proceeding, the Court finds
> that the State has complied with the defense request in the

4

motion, in their motion to compel discovery. And based on the record, based on the evidence that is on record up to this point in this proceeding, the State has complied with the motion to compel discovery. So therefore, the motion to compel discovery is denied.

On April 5, 2019, the Circuit Court entered an order denying the Motion to Compel, which also stated that "the court found that the State complied with [Sorensen's] request for discovery."

On December 13, 2019, the State filed State's Motion in Limine No. 2 (**MIL 2**), seeking an order preventing any comment upon or reference to, *inter alia*, the identity of the person who communicated with Cpl. Unga concerning the transfer of the firearm. The hearing on MIL 2 was held on December 20, 2019. Sorensen argued that he should be allowed to confront Cpl. Unga on the witness stand and have Cpl. Unga deny the defense's ability to find out who the confidential informant was. The Circuit Court orally granted the State's request to preclude any comment upon or reference to the identity of the confidential informant because the matter had been previously litigated.

Also relevant to this appeal, on January 2, 2020, the State gave notice that there was a pending matter for witness Nalani Kaahu (**Kaahu**) for Theft in the Fourth Degree, and that Kaahu had previously been twice convicted of Theft in the Second Degree. On January 6, 2020, after reviewing the criminal abstracts in camera, the Circuit Court found the Theft in the Second Degree convictions were relevant.

C. <u>Guilt Phase of Trial</u>

Trial was held from January 6, 2020, to January 13, 2020. The State called twenty-eight witnesses, including, *inter*

*alia*, Tavares-Fairchild, Sandon Scanlan (**Scanlan**), Kaahu, Cpl. Unga, and HPD Criminalist Cindee Lorenzo (**Criminalist Lorenzo**). Sorensen also called Kaahu as a witness.

Tavares-Fairchild testified as follows.  On September 29, 2018, Tavares-Fairchild was working as a cashier in the game room.  He kept the cash in a blue envelope.  Feliciano was a friend of Tavares-Fairchild's who was shot and killed in the game room on the night of September 29, 2018.  Tavares-Fairchild testified that Paakaula asked him for change for a twenty dollar bill, Tavares-Fairchild pulled out the blue envelope to give him change, and Paakaula snatched the envelope from Tavares-Fairchild.  Tavares-Fairchild and Paakaula got into a "scuffle" over the envelope, and other patrons attempted to subdue Paakaula to regain the envelope.  During the struggle, Tavares-Fairchild reportedly heard two loud thuds from the interior door, and then a "loud bang."  He stated that he saw a "plume of smoke coming from the security gate."  Tavares-Fairchild later saw Feliciano bleeding on the ground.  One of the patrons tried to stop the bleeding by applying pressure to the wound, and Tavares-Fairchild called the police.

Scanlan worked as security for the game room on September 29, 2018.  Scanlan testified that the game room had an exterior wooden door and an interior screen door.  The exterior door had a lock that was controlled remotely by Scanlan, and the interior door had a manual lock that Scanlan would open.  A person standing outside the closed interior screen door was visible to those inside the game room.  Scanlan reported hearing

Sorensen tell Paakaula to get change.  Scanlan thought Sorensen was leaving, so he buzzed the exterior door for Sorensen.  Scanlan reported hearing Sorensen tell Paakaula to grab the money.  Sorensen was standing partially inside the interior door.  After the altercation between Tavares-Fairchild and Paakaula started, Scanlan slammed the interior door shut and manually locked the deadbolt.  Scanlan stated he was eye-to-eye with Sorensen.  Sorensen unsuccessfully tried to get back into the game room.  Scanlen testified that Sorensen said, "Fuck, you like play?" before pulling out a gun from a fanny pack.  Scanlan testified that once he saw the gun, he moved to the side.  Scanlan stated that he saw Sorensen point the gun into the game room.  Scanlan reported hearing a loud pop from the doorway, but he did not actually see the gun being fired.  Scanlan later became aware that Feliciano had been hit.  After hearing the loud pop, Scanlan tried to hold Paakaula down with Tavares-Fairchild and the other patrons.

Prior to Kaahu's testimony, the Circuit Court reiterated that Kaahu could be questioned about whether she had been twice convicted of Theft in the Second Degree.  The Circuit Court denied Sorensen's request to question Kaahu about specific details of the convictions.

Kaahu testified that on September 29, 2018, Sorensen and Paakaula were at her home.  Kaahu wanted Sorensen and Paakaula to leave, so she drove her husband Damien, Sorensen, and Paakaula in her van.  Sorensen mentioned the game room during the drive, and Kaahu drove the four of them to the game room.  Kaahu

entered the game room first, and Damien, Sorensen, and Paakaula eventually joined her.  About twenty minutes after they arrived, Kaahu and Damien left the game room and waited in their van for Sorensen and Paakaula.  Kaahu testified that after a few minutes, Sorensen entered the van and said, "Unks, go, they're mobbing him."  Sorensen laid on the floor of the van, and Damien drove the van home.  When they got home, Sorensen left.

Sorensen elicited on cross-examination that Kaahu had been twice convicted of Theft in the Second Degree, a class C felony, and that the convictions took place approximately ten years prior.  The Circuit Court sustained the Deputy Prosecuting Attorney's (**DPA**) objection to Sorensen's attempt to question Kaahu about her sentence.

It was established at trial that shortly after Tavares-Fairchild's call to 9-1-1, HPD officers arrived at the scene. HPD officers detained Paakaula, who was being restrained by Tavares-Fairchild.  Emergency Medical Technicians then arrived and administered first aid to Feliciano and transported him to Queen's Medical Center.  Feliciano died the following morning. The cause of death was a gunshot wound to the chest.  An HPD evidence specialist testified that HPD recovered a cartridge case from the exterior floor of the game room external door, which was received into evidence as State Exhibit 111.  The medical examiner removed a bullet from Feliciano during the autopsy, which was received into evidence as State Exhibit 112.

On October 1, 2018, two days after the incident, Sorensen surrendered himself into police custody.

Prior to Cpl. Unga's testimony at trial, the State sought an order precluding Sorensen from questioning Cpl. Unga about the confidential informant who facilitated the recovery of the firearm.  The Circuit Court reiterated its ruling that "[n]either side can ask [Cpl.] Unga the name of the person who gave him the gun[.]"  Cpl. Unga testified on direct examination about the retrieval of the firearm from the confidential informant, consistent with his testimony adduced at the Motion to Compel hearing.  Cpl. Unga identified State Exhibits 113 and 114 as the Smith & Wesson handgun and the magazine that he recovered from the confidential informant.  The handgun and magazine were received in evidence.  On cross-examination, Cpl. Unga testified that he knew the confidential informant, and that the confidential informant stated that the firearm may have been involved in some bad things and that he wanted to get it off the street.  Sorensen was prevented from questioning Cpl. Unga about the information the confidential informant gave him about the firearm.

Criminalist Lorenzo was qualified as an expert witness in the identification of discharge cartridge cases or bullets to a firearm.  Lorenzo test fired the Smith & Wesson handgun recovered by Cpl. Unga and conducted a comparison between the test-fired cartridge case with the cartridge case recovered at the incident scene.  Lorenzo found that there were sufficient corresponding breech face signatures and marks to conclude that the cartridge case from the incident scene was fired by the Smith & Wesson handgun.  Lorenzo also compared the test-fired bullet

exemplars with the bullet recovered at the incident scene. Lorenzo found that there were sufficient corresponding barrel signatures to conclude that the recovered bullet was fired from the Smith & Wesson handgun.

On January 15, 2020, the jury found Sorensen guilty of Count 1's included offense of Manslaughter, Count 3, Carrying or Use of a Firearm while Engaged in the Commission of a Separate Felony, and Count 5, Place to Keep Pistol or Revolver.

D.    Sentencing Phase of Trial

After the jury's verdict, sentencing was delayed for over three years due to the withdrawal of Sorensen's counsel and the COVID-19 epidemic, among other reasons.

On January 22, 2020, the State filed State's Motion for Extended Terms of Imprisonment, seeking extended terms of imprisonment for all three counts.  On March 10, 2020, the State also filed State's Motion for Consecutive Term Sentencing, seeking consecutive terms of imprisonment for all three counts.

On July 19, 2021, Sorensen filed Defendant's Motions in Limine, seeking to, *inter alia*, exclude from use at trial testimonial or documentary evidence that is overly prejudicial:

> The Defendant requests an Order excluding from use at trial testimonial or documentary evidence that is overly prejudicial evidence.  HRE 403.  This includes evidence that was part of the guilt/innocence phase of trial, to include but not be limited to:  autopsy photos.  The jury will be aware of the most serious charge for which [Sorensen] was convicted, Manslaughter.  It is unnecessary for the jury to see gruesome photos of a corpse and the photographs' probative value is outweighed by unfair prejudice.  Id.

At the August 22, 2023 hearing on Sorensen's Motions in Limine, the State sought leave to "introduce a thumbnail

sketch . . . of the surrounding facts and circumstances that gave rise to the convictions for which Mr. Sorensen awaits sentencing."  The Circuit Court allowed the State to present some of the facts elicited during the guilt phase of the trial:

> [B]ecause we're not using the same jury here, okay, we -- the State -- the court is allowing the State to present some of the witnesses, give the jury a -- some kind of background but not the – all of the facts that were elicited during the -- the guilt phase of the trial so the -- the jury can have some -- some background as to what this case was and -- which led to the manslaughter conviction.  So based on the nature -- based on the offer of proof for those proposed witnesses and the time, over the defense objection the court is allowing those witnesses to testify as -- based on the offer proffered by the State.

The sentencing phase of trial took place in front of a different jury, on September 13 and 14, 2023.  In closing argument, Sorensen's counsel stated, "I want to emphasize that we are not –- this is not the time or place really for us to challenge the verdict[.]"  Sorensen's counsel then pointed out that the video surveillance did not catch who fired the shot, that HPD never obtained the surveillance footage of the outer door where the shot was fired, that the diameter of the bullet hole left by the 9 millimeter bullet was 20 millimeters, that the height of the bullet hole in the interior door was not measured, and that there were discrepancies in the photographs taken at the incident scene.

> In the State's rebuttal, the DPA stated:
>
> The defendant's guilt has long since been established. Yet defense would have us relitigate the underlying facts and circumstances that caused Jacob Feliciano's death.  The purpose of this hearing is for the prosecution just to give a thumbnail sketch of the evidence that was presented during the guilt phase trial.
>
> Page 11 of your instructions read:
>
> The prosecution is not required to call as witnesses all persons who may have been present at any of the events disclosed by the evidence, or may appear to have some

> knowledge of these events, or to produce all objects or documents mentioned or suggested by the evidence.
>
> We're not here to relitigate the defendant's guilt. Please be assured that during the guilt phase trial the prosecution's presentation was much more expansive than the one-day thumbnail that I gave you yesterday.
>
> [DEFENSE COUNSEL]:  Objection.  Counsel testifying.
>
> THE COURT:  Overrule.

The jury found that Sorensen was a multiple offender that had been sentenced for two or more felonies, and that it was necessary for the protection of the public to extend Sorensen's sentence for Count 5, Place to Keep Pistol or Revolver, but not for Count 1, Manslaughter, or Count 3, Carrying Firearm in the Commission of a Separate Felony.

On January 25, 2024, the Circuit Court entered the Amended Judgment, sentencing Sorensen to a twenty-year term for Count 1, a twenty-year term for Count 3, and a twenty-year extended term for Count 5.

On February 9, 2024, the Circuit Court entered Findings of Fact, Conclusions of Law, and Order Granting State's Motion for Consecutive Term Sentencing.  The Circuit Court found and concluded that the nature and the circumstances of the offenses factor supported consecutive sentences because Sorensen's crimes were neither run of the mill nor routine, that Sorensen had no firearms registered to him and no license to carry, that the firearm used was a pistol with a defaced serial number, and that Sorensen did not act under strong provocation.

The Circuit Court found and concluded that Sorensen's history and characteristics factor supported consecutive term sentencing because Sorensen was previously convicted of extortion

by interstate communication and assault on different dates involving different victims, and that Sorensen failed to comply with the terms of supervised release and was resentenced to additional terms of imprisonment.

The Circuit Court found and concluded that the seriousness of the offenses factor favored consecutive terms because (1) in Count 1, Sorensen was convicted of Manslaughter, a class A felony, for recklessly causing Feliciano's death; (2) in Count 3, Sorensen was convicted of Carrying or Use of a Firearm in the Commission of a Separate Felony, which is a class A felony; and (3) in Count 5, Sorensen was convicted of Place to Keep Pistol or Revolver, a class B felony.  The Circuit Court deemed Counts 1 and 5 to be serious offenses.

The Circuit Court found and concluded that the respect for the law factor weighed in favor of consecutive sentences because Sorensen demonstrated a profound disrespect for the law when he brought a loaded operable semiautomatic pistol to the game room, there was no legitimate explanation for his possession or use of the pistol on that day, and by discharging the semiautomatic pistol in the game room, Sorensen demonstrated a callous disregard for the safety of others.

The Circuit Court found and concluded that a consecutive term sentence for each count would provide just punishment because a concurrent twenty-year term was inadequate to satisfy the retributive objective of sentencing.  The Circuit Court found and concluded that consecutive sentencing was needed to ensure the protection of the public because Sorensen had a

documented history of escalating violence.  The Circuit Court found and concluded that consecutive sentences would provide Sorensen needed treatment because Sorensen had previous opportunities to rehabilitate himself but did not do so.

Sorensen timely filed the Notice of Appeal on February 23, 2024.

II.  <u>POINTS OF ERROR</u>

Sorensen raises five points of error on appeal, contending that:  (1) the Circuit Court erred in denying Sorensen's Motion to Compel regarding the recovery of the firearm, including the identity of the person who came into possession of the firearm; (2) the Circuit Court erred in precluding Sorensen from introducing the facts and circumstances regarding the recovery of the firearm from the confidential informant; (3) the Circuit Court abused its discretion in precluding Sorensen from fully impeaching Kaahu; (4) the DPA committed misconduct during his closing argument in the sentencing hearing, which deprived Sorensen of his right to a fair hearing; and (5) the Circuit Court abused its discretion in sentencing Sorensen to sixty years of imprisonment.

III. <u>APPLICABLE STANDARDS OF REVIEW</u>

We review a trial court's ruling limiting the scope of discovery under the abuse of discretion standard.  <u>State v. Fukusaku</u>, 85 Hawaiʻi 462, 477-78, 946 P.2d 32, 47-48 (1997).  "[A]n abuse of discretion occurs if the trial court has 'clearly exceed[ed] the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party

litigant.'"  State v. Austin, 143 Hawaiʻi 18, 29, 422 P.3d 18, 29

(2018) (cleaned up).

> The scope of cross-examination is generally within the sound discretion of the trial court.  While the right of cross-examination protected by the Confrontation Clause of the Sixth Amendment may not be unduly restricted it has never been held that this right is absolutely without restriction.  However, the trial court's discretion in exercising control and excluding evidence of a witness's bias or motive to testify falsely becomes operative only after the constitutionally required threshold level of inquiry has been afforded the defendant.  The Sixth Amendment is satisfied where sufficient information is elicited to allow the jury to gauge adequately a witness's credibility and to assess his [or her] motives or possible bias.  When the trial court excludes evidence tending to impeach a witness, it has not abused its discretion as long as the jury has in its possession sufficient information to appraise the biases and motivations of the witness.

State v. Balisbisana, 83 Hawaiʻi 109, 114, 924 P.2d 1215, 1220

(1996) (cleaned up).

"Allegations of prosecutorial misconduct are reviewed

under the harmless beyond a reasonable doubt standard, which

requires an examination of the record and a determination of

'whether there is a reasonable possibility that the error

complained of might have contributed to the conviction.'"

Austin, 143 Hawaiʻi at 28–29, 422 P.3d at 28–29 (citing State v.

Sawyer, 88 Hawaiʻi 325, 329 n.6, 966 P.2d 637, 641 n.6 (1998)

(quoting Balisbisana, 83 Hawaiʻi at 114, 924 P.2d at 1220).

Regarding sentencing, the Hawaiʻi Supreme Court has

held:

> A sentencing judge generally has broad discretion in imposing a sentence.  The applicable standard of review for sentencing or resentencing matters is whether the court committed plain and manifest abuse of discretion in its decision.  Factors which indicate a plain and manifest abuse of discretion are arbitrary or capricious action by the judge and a rigid refusal to consider the defendant's contentions.  And, generally, to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment to the litigant.
>
> State v. Kong, 131 Hawaiʻi 94, 101, 315 P.3d 720, 727 (2013).

> Further, "[t]he weight to be given the factors set forth in HRS § 706-606 in imposing sentence is a matter generally left to the discretion of the sentencing court, taking into consideration the circumstances of each case." <u>Id.</u> (quoting <u>State v. Akana</u>, 10 Haw.App. 381, 386, 876 P.2d 1331, 1334 (1994)).

<u>State v. Barrios</u>, 139 Hawaiʻi 321, 328, 389 P.3d 916, 923 (2016).

IV.  <u>DISCUSSION</u>

A.  <u>The Confidential Informant</u>

Sorensen argues that the Circuit Court erred in denying disclosure of the identity of the confidential informant because the confidential informant may have possessed the necessary information to trace the firearm to the person who was in possession of and fired the firearm during the incident. Sorensen also argues that the Circuit Court erred by failing to conduct an in camera review of the affidavits or testimony of the confidential informant and Cpl. Unga, as well as by failing to make any findings as to whether the confidential informant was a necessary witness.

Under HRPP Rule 16(e)(5)(ii), disclosure of an informant's identity shall not be required where the informant's identity is a prosecution secret and a failure to disclose will not infringe the constitutional rights of the defendant. Under HRE Rule 510(a), the government has a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of law to a law enforcement officer. However, under the HRE Rule 510(c)(2) exception:

> If it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination of the issue of guilt or innocence in a criminal case or of a material issue on the merits in a civil case to which the government is a party, and the government invokes the privilege, the judge

> shall give the government an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony.  The showing will ordinarily be in the form of affidavits, but the judge may direct that testimony be taken if the judge finds that the matter cannot be resolved satisfactorily upon affidavit.  If the judge finds that there is a reasonable probability that the informer can give the testimony, and the government elects not to disclose the informer's identity, the judge on motion of the defendant in a criminal case shall dismiss the charges to which the testimony would relate, and the judge may do so on the judge's own motion.

In order to make an adequate record for appellate review:

> (1) the circuit court must determine if there is information in the affidavit that could lead to the identification of the [confidential informant]; (2) the circuit court must determine if the information is discoverable or privileged pursuant to HRE Rule 510 or HRPP Rule 16(e)(5)(ii) and state its reasons in findings of fact and conclusions of law; (3) if the information is privileged, the circuit court must determine if an exception applies to the privilege; and (4) if the circuit court believes an exception applies, it should state its reasons in findings of fact and conclusions of law.

State v. Rodrigues, 88 Hawaiʻi 363, 368-69, 966 P.2d 1089, 1094-95 (1998); see also State v. Opupele, 88 Hawaiʻi 433, 438, 967 P.2d 265, 270 (1998) (vacating and remanding conviction because trial court failed to make any findings as to whether the confidential informant was a necessary witness).

Here, Sorensen filed the Motion to Compel, seeking all reports relating to how the firearm came into the hands of the confidential informant, their full identity, and information as to how to contact this person.  The Circuit Court did not conduct an in camera review of the information regarding the confidential informant.  HRE Rule 510(c)(2).  The Circuit Court denied Sorensen's Motion to Compel based on its finding that "the State complied with [Sorensen's] request for discovery."  The Circuit Court made none of the findings required under HRE Rule 510(c)(2).

In this case, the confidential informant facilitated the firearm's retrieval, whereas confidential informer cases more typically involve a confidential informer who provided information that served as the basis for a search warrant. <u>See</u>, <u>e.g.</u>, <u>Rodrigues</u>, 88 Hawaiʻi at 364, 966 P.2d at 1090; <u>Opupele</u>, 88 Hawaiʻi at 435, 967 P.2d at 267; <u>State v. Kapiko</u>, 88 Hawaiʻi 396, 397-98, 967 P.2d 228, 229-30 (1998). Regardless, the State used the firearm as evidence against Sorensen at trial. Accordingly, we cannot conclude that the Circuit Court's failure to make the requisite findings under HRE Rule 510 was harmless error.

Therefore, we must vacate Sorensen's conviction and remand the case with instructions to the Circuit Court to make the requisite findings under HRE Rule 510.[2]

Sorensen further argues that the Circuit Court erred in precluding questioning of Cpl. Unga regarding the recovery of the firearm from the confidential informant. Specifically, Sorensen argues that he should have been allowed to question Cpl. Unga about how or why the confidential informant came into possession of the firearm, from whom the confidential informant obtained the firearm, when the confidential informant came into possession of the firearm, how well Cpl. Unga knew the confidential informant,

---

[2] When a trial court fails to follow the procedures mandated by HRE Rule 510 in determining whether the identity of a confidential informant needed to be disclosed, and that error was not harmless, the remedy is to vacate the defendant's conviction and remand to the trial court for determination of the applicability of the informer privilege. <u>Opupele</u>, 88 Hawaiʻi at 441, 967 P.2d at 273. If the trial court determines that the HRE Rule 510 privilege applies and that no exception applies, then the court shall so order and reenter the judgment of conviction. <u>Id.</u> If the court determines that the identity of the confidential informant must be revealed, it must order the prosecution to elect whether to disclose the identity or dismiss the charges against the defendant. <u>Id.</u> If the prosecution elects to disclose the confidential informant's identity, a new trial must be held. <u>Id.</u>

and why Cpl. Unga did not want to disclose the confidential informant's identity.  However, whether the Circuit Court erred in precluding this line of questioning, wholly or in part, is intertwined with and may depend on the Circuit Court's determination whether the identity of the confidential informant must be disclosed.[3]  Therefore, it is premature for us to address this argument.

B.    Kaahu's Prior Convictions

Sorensen argues that the Circuit Court erred in precluding evidence regarding the specific facts and circumstances of Kaahu's convictions because this evidence was relevant and admissible to the issue of Kaahu's credibility. Sorensen contends that the Circuit Court should have allowed Sorensen to question Kaahu about the items stolen, from whom the items were stolen, the value of the items, the extent of the planning, and the period of time involved in Kaahu's Theft in the Second Degree convictions.

HRE Rule 609(a) provides in relevant part:  "For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime is inadmissible except when the crime is one involving dishonesty."  The commentary to HRE Rule 609(a) clarifies that the wording of the rule

> is employed to make it clear that Rule 403's discretionary balance governs the question of admissibility under this rule.  For purposes of this balance, the relevance of a prior conviction involving dishonesty will depend primarily upon the nature of the crime and the age of the conviction.

_____

[3]     We note that pursuant to HRE Rule 513, the claim of a privilege is not a proper subject of comment by counsel, and that proceedings shall be conducted, to the extent practicable, so that claims of privilege are made without the knowledge of the jury.

"The scope and extent of cross-examination on collateral matters bearing on credibility is within the sound discretion of the trial judge."  State v. Emmsley, 3 Haw. App. 459, 467, 652 P.2d 1148, 1154 (1982) (citation omitted).

> [T]he trial court's discretion in exercising control and excluding evidence of a witness's [credibility] becomes operative only after the constitutionally required threshold level of inquiry has been afforded the defendant. . . . 'When the trial court excludes evidence tending to impeach a witness, it has not abused its discretion as long as the jury has in its possession sufficient information to appraise the [credibility] of the witness.'

State v. White, 92 Hawaiʻi 192, 205, 990 P.2d 90, 103 (1999) (quoting Balisbisana, 83 Hawaiʻi at 114, 924 P.2d at 1220).

Here, the Circuit Court allowed Sorensen's counsel to elicit from Kaahu that she had been twice convicted of Theft in the Second Degree, that Theft in the Second Degree is a class C felony, and that the convictions took place approximately ten years prior.  The Circuit Court precluded Sorensen's counsel from questioning Kaahu further about the details of the convictions. The extent of further cross-examination regarding the facts and circumstances of Kaahu's prior convictions rested within the discretion of the Circuit Court.  See White, 92 Hawaiʻi at 205, 990 P.2d at 103.  Sorensen argues that the facts and circumstances of Kaahu's prior convictions were probative of her untruthfulness.  However, evidence of a witness's prior convictions may still be excluded depending on the nature of the crime and the age of the conviction.  HRE Rule 609(a) cmt.; see also HRE Rule 403.  Theft offenses are not *per se* crimes of dishonesty and Kaahu's convictions took place approximately ten years prior to Sorensen's trial.  See, e.g., State v. Pacheco, 96 Hawaiʻi 83, 100, 26 P.3d 572, 589 (2001); State v. Pudiquet, 82

Hawaiʻi 419, 427, 922 P.2d 1032, 1040 (App. 1996) (affirming trial court's determination that defendant's nine-year-old theft conviction was too "collateral" and "remote" to be admissible to impeach prosecution's witness). We conclude that the Circuit Court did not abuse its discretion in limiting the scope of Sorensen's cross-examination of Kaahu.

C. Asserted Prosecutorial Misconduct

Sorensen argues that the DPA's comments during the sentencing hearing's closing argument amounted to prosecutorial misconduct.

> A prosecutor is allowed wide latitude in discussing the evidence during closing argument. State v. Rogan, 91 Hawaiʻi 405, 412, 984 P.2d 1231, 1238 (1999). Prosecutors may "state, discuss, and comment on the evidence as well as draw all reasonable inferences from the evidence." Id. (citations omitted). "In other words, closing argument affords the prosecution . . . the opportunity to persuade the jury that its theory of the case is valid, based upon the evidence adduced and all reasonable inferences that can be drawn therefrom." Id. at 413, 984 P.2d at 1239 (citation omitted).
>
> However, this latitude is not without limit. "[T]he scope of [the prosecutor's] argument must be consistent with the evidence and marked by the fairness that should characterize all of the prosecutor's conduct." Id. (quoting ABA Prosecution Function Standard 3-5.8(a)). "A prosecutor exceeds the acceptable scope of closing argument when a statement cannot be justified as a fair comment on the evidence but instead is more akin to the presentation of wholly new evidence to the jury, which should only be admitted subject to cross-examination, to proper instructions and to the rules of evidence. State v. Underwood, 142 Hawaiʻi 317, 326, 418 P.3d 658, 667 (2018) (quoting State v. Basham, 132 Hawaiʻi 97, 112, 319 P.3d 1105, 1120 (2014) (internal quotation marks omitted)).

State v. Pasene, 144 Hawaiʻi 339, 367-68, 439 P.3d 864, 892-93 (2019) (cleaned up). Prosecutors have latitude to respond in rebuttal to arguments raised by defense counsel in their closing. State v. Acker, 133 Hawaiʻi 253, 280, 327 P.3d 931, 958 (2014); State v. Mars, 116 Hawaiʻi 125, 142, 170 P.3d 861, 878 (App. 2007) ("The prosecution may base its closing argument on the

evidence presented or reasonable inferences therefrom, respond to comments by defense counsel which invite or provoke response, denounce the activities of defendant and highlight inconsistencies in defendant's argument." (internal citation and quotation marks omitted)).

Here, Sorensen's counsel made a number of comments in closing argument regarding the evidence adduced in the guilt phase of trial.  He argued to the jury that the video surveillance footage did not show who fired the shot or where the shot came from, that HPD never obtained the surveillance footage of the outer door, that the hole left by the 9 millimeter bullet in the door was 20 millimeters, that the height of the bullet hole was not measured, and that there were discrepancies in HPD's photographs of the incident scene.  Although counsel acknowledged "this is not the time or place really for us to challenge the verdict," he nevertheless made arguments that appeared to challenge the evidence supporting the guilty verdict.

The DPA then stated in rebuttal:

> The defendant's guilt has long since been established. Yet defense would have us relitigate the underlying facts and circumstances that caused Jacob Feliciano's death.  The purpose of this hearing is for the prosecution just to give a thumbnail sketch of the evidence that was presented during the guilt phase trial.
>
> . . . .
>
> We're not here to relitigate the defendant's guilt. Please be assured that during the guilt phase trial the prosecution's presentation was much more expansive than the one-day thumbnail that I gave you yesterday.

The Circuit Court allowed the DPA's statement over objection.  The DPA's comment that the evidence presented during the guilt phase of trial was "much more expansive" than the evidence presented in the sentencing phase of trial was made in

response to comments by Sorensen's counsel.  We conclude that the DPA's comments did not constitute misconduct.

    D.    <u>Consecutive Sentences</u>

Sorensen argues that the Circuit Court abused its discretion when it imposed consecutive terms of imprisonment because it did not sufficiently explain its rationale for each consecutive sentence.

HRS § 706-606 (2014) provides the factors the trial court must consider in sentencing a defendant:

> **§ 706-606  Factors to be considered in imposing a sentence.**  The court, in determining the particular sentence to be imposed, shall consider:
>
>   (1)  The nature and circumstances of the offense and the history and characteristics of the defendant;
>
>   (2)  The need for the sentence imposed:
>
>     (a)  To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;
>
>     (b)  To afford adequate deterrence to criminal conduct;
>
>     (c)  To protect the public from further crimes of the defendant; and
>
>     (d)  To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
>   (3)  The kinds of sentences available; and
>
>   (4)  The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Under HRS § 706-668.5(1) (Supp. 2023), where a defendant is convicted of multiple offenses, there exists a presumption that multiple terms of imprisonment run concurrently, unless the court orders or the applicable statute mandates that the terms run consecutively.  Courts must state on the record at

the time of sentencing the reasons for imposing a consecutive sentence for each and every consecutive sentence.  <u>Barrios</u>, 139 Hawaiʻi at 337, 389 P.3d at 932.  Even if a court uses identical factors to support multiple consecutive sentences, it must specify the basis or identify another basis for determining how many consecutive sentences to impose.  <u>Id.</u>; <u>see</u>, <u>e.g.</u>, <u>State v. Sandoval</u>, 149 Hawaiʻi 221, 236, 487 P.3d 308, 323 (2021) (vacating imposition of multiple consecutive sentences because circuit court failed to specify why it imposed each of the thirteen sentences consecutively); <u>State v. Bautista</u>, 153 Hawaiʻi 284, 291, 535 P.3d 1029, 1036 (2023) (vacating imposition of three consecutive sentences because circuit court offered no rationale for each consecutive sentence).

Here, the Circuit Court analyzed each HRS § 706-606 factor to explain its rationale for consecutive sentencing and found and concluded that each factor supported consecutive sentencing.  The Circuit Court determined, *inter alia*, that Sorensen's crimes were neither run of the mill nor routine, that Sorensen had previously been convicted of extortion by interstate communication and assault on different dates involving different victims, that Sorensen's supervised release prohibited him from possessing a firearm, that there was no legitimate explanation for Sorensen's possession and use of the semiautomatic pistol at the game room, that Sorensen demonstrated a callous disregard for the safety of others by discharging the semiautomatic pistol into the game room, and that Sorensen has a documented history of escalating violence.  However, the Circuit Court failed to

explain its rationale for imposing <u>each</u> consecutive sentence. Because the Circuit Court failed to meet the stringent standard applicable to multiple consecutive sentences by clearly articulating its reasons for each of the consecutive sentences, we conclude that the Circuit Court abused its discretion in imposing multiple consecutive sentences here.  Sorensen's consecutive sentences must be vacated.  Therefore, upon remand to the Circuit Court, even if the Circuit Court reenters the judgment of conviction upon making the requisite findings concerning the confidential informant, Sorensen must be resentenced.

V.    <u>CONCLUSION</u>

For these reasons, the Circuit Court's January 25, 2024 Amended Judgment is vacated and we remand the case for further proceedings consistent with this Memorandum Opinion.  The Circuit Court is hereby instructed to make the requisite findings under HRE Rule 510.  If the Circuit Court determines that the identity of the confidential informant must be revealed, it must order the State to elect whether to disclose the identity of the confidential informant or dismiss the charges.

If the State elects to disclose the confidential informant's identity, a new trial must be held.

If the Circuit Court determines that HRE Rule 510 privilege applies and that no exception to the privilege applies, a new trial is not required and the Circuit Court shall reenter the judgment of conviction.

However, even if a new trial is not required and the judgment of conviction is to be reentered, the Circuit Court must resentence Sorensen in accordance with this Memorandum Opinion prior to the reentry of the judgment of conviction and sentence.

DATED:  Honolulu, Hawaiʻi, April 30, 2025.

On the briefs:

James S. Tabe,
for Defendant-Appellant.

Brian R. Vincent,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge